# ORIGINAL

FRANKIE SUE DEL PAPA
Attorney General
By: RENE L. HULSE
Deputy Attorney General
Criminal Justice Division
Nevada Bar Number 3778
555 East Washington Ave., #3900
Las Vegas, Nevada 89101
(702) 486-3420
Attorneys for Respondents

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JIMMIE DAVIS, )
            )
        Petitioner, )
            )
    v.      )
            )   **MOTION TO DISMISS PETITION FOR WRIT**
            )   **OF HABEAS CORPUS PURSUANT TO**
JOHN IGNACIO, et al., )   **28 U.S.C. § 2254 BY A PERSON IN**
            )   **STATE CUSTODY**
        Respondents. )
_____)

Case No. CV-N-99-137-ECR (PHA)

Respondents, through legal counsel, FRANKIE SUE DEL PAPA, Nevada Attorney General, by

Deputy Attorney General Rene L. Hulse, hereby requests an order dismissing Petitioner JIMMIE

DAVIS' (DAVIS) Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in

State Custody. This Motion is based upon the pleadings and papers on file herein, the Exhibits attached

hereto, and the following Memorandum of Points and Authorities.

Respondents also submit the following documents filed in the state courts of Nevada to support

this Motion:

**Eighth Judicial District Court of Nevada, Case No. C85078**

Exhibit A — Reporter's Transcript of Plea hearing on October 12, 1988, filed on February 2,
1990;

Exhibit B — Reporter's Transcript of Sentencing hearing on December 12, 1988, filed on May
26, 1992;

Exhibit C — Petition for Post-Conviction Relief (NRS 177.315), filed on December 20, 1989;

ORIGINAL

1

Exhibit D — Affidavit in Support of Petition for Post-Conviction Relief, filed on January 9, 1992;

2

Exhibit E — Supplemental Points and Authorities in Support of Petitioner's Petition for Post-Conviction Relief, filed on January 9, 1992;

3

4

Exhibit F — Findings of Facts and Conclusions of Law and Order, filed on April 15, 1992;

5

**Nevada Supreme Court, Case No. 23338**

6

Exhibit G — Appellant's Opening Brief, filed January 7, 1993;

7

Exhibit H — Appellant's Reply Brief, filed April 26, 1993;

8

Exhibit I — Order Dismissing Appeal, filed January 25, 1995;

9

**Eighth Judicial District Court of Nevada, Case No. C85078**

10

Exhibit J — Petition for Writ of Habeas Corpus (Post-Conviction), filed September 9, 1995;

11

Exhibit K — Affidavit in Support of Motion for Writ of Habeas Corpus, filed September 9, 1995;

12

Exhibit L — First Amended Petition for Writ of Habeas Corpus, filed October 13, 1995;

13

Exhibit M — Order Denying Petition for Writ of Habeas Corpus (Post-Conviction), filed March 4, 1996;

14

15

Exhibit N — Notice of Appeal, filed on March 7, 1996;

16

Exhibit O — Motion to Correct Illegal Sentence, filed on or about August 26, 1997;

17

Exhibit P — Order Denying Defendant's Motion to Correct Illegal Sentence, filed February 17, 1998;

18

**Nevada Supreme Court, Case Nos. 28400 & 31521**

19

Exhibit Q — Order Dismissing Appeals, filed on March 4, 1999; and

20

**Eighth Judicial District Court of Nevada, Case No. C85078**

21

Exhibit R — Criminal Court Minutes, dated September 12, 1988 through November 21, 1997.

22

DATED this _16th_ day of June, 1999.

23

24

FRANKIE SUE DEL PAPA
Attorney General

25

By: _Rene L. Hulse_

26

RENE L. HULSE
Deputy Attorney General

27

28

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTUAL BACKGROUND

On July 31, 1988, DAVIS and two friends were in an apartment in North Las Vegas, Nevada, when they were approached by Brittain Gelabert, who wanted to sell a .38 caliber Smith and Wesson revolver for $100. Exhibit M. Brittain removed the gun and several bullets from her purse and placed them on the counter top. DAVIS picked up the gun, opened the cylinder, loaded it, pointed the gun at Brittain, and demanded that she lower the price. Brittain refused. DAVIS decided to keep the gun without paying for it and told Brittain to leave. When she again refused, DAVIS shot her. Exhibit M. DAVIS was sixteen (16) years old at the time the crime was committed. Exhibit A.

### II.

### PROCEDURAL BACKGROUND

On October 12, 1988, DAVIS entered a plea of guilty to First Degree Murder in the Eighth Judicial District Court of Nevada. Exhibit A. On December 12, 1988, DAVIS was found guilty of that crime by virtue of his guilty plea and sentenced to serve a term of life without the possibility of parole in the Nevada State Prison. Exhibit B. DAVIS did not institute a direct appeal of his conviction.

On December 20, 1989, DAVIS filed a Petition for Post-Conviction Relief in the Eighth Judicial District Court of Nevada (First State Petition). Exhibits C & D. The court appointed counsel to represent DAVIS, and on January 9, 1992, counsel filed Supplemental Points and Authorities in Support of DAVIS' First State Petition. Exhibit E. Without conducting an evidentiary hearing, the court entered its order denying the First State Petition on April 15, 1992. Exhibit F.

DAVIS appealed the denial of the First State Petition to the Nevada Supreme Court. Exhibits G & H. The district court appointed counsel to represent DAVIS in his appeal. Exhibit R, at p. 3, 3/25/92. On January 24, 1995, the Nevada Supreme Court dismissed DAVIS' appeal of his First State Petition. Exhibit I.

On September 9, 1995, DAVIS filed a Petition for Writ of Habeas Corpus (Post-Conviction) in the Eighth Judicial District Court of Nevada (Second State Petition). Exhibits J & K. DAVIS also requested appointed of counsel, which the court granted on September 27, 1995. Exhibit R, at p.5. On

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1   October 13, 1995, counsel for DAVIS filed an amended petition.  Exhibit L.  Without conducting an

2   evidentiary hearing, the court denied the relief DAVIS requested pursuant to an order entered on March

3   4, 1996.  Exhibit M.

4       DAVIS appealed the denial of the Second State Petition to the Nevada Supreme Court.  Exhibit

5   N.  On March 4, 1999, the Nevada Supreme Court dismissed DAVIS' appeal of his Second State

6   Petition.  Exhibit Q.

7       On or about August 26, 1997, DAVIS filed a Motion to Correct Illegal Sentence in the Eighth

8   Judicial District Court of Nevada (Third State Petition).  Exhibit O.  Without appointing counsel or

9   conducting an evidentiary hearing, the district court denied DAVIS' Third State Petition on February

10  17, 1998.  Exhibit P.

11      DAVIS appealed the denial of the Third State Petition to the Nevada Supreme Court.  Exhibit Q.

12  On March 4, 1999, DAVIS appeal was dismissed pursuant to an Order Dismissing Appeal.  Exhibit Q.

13      DAVIS now seeks relief from this Court pursuant to the instant Petition for a Writ of Habeas

14  Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody.  Because DAVIS' Petition contains

15  both exhausted and unexhausted claims, however, it is a mixed petition that must be dismissed.

### III.

### LEGAL DISCUSSION

18
19  **A.     DAVIS' PETITION SHOULD BE DISMISSED BECAUSE IT IS A MIXED PETITION
         CONTAINING BOTH EXHAUSTED AND UNEXHAUSTED CLAIMS.**

20      The federal courts cannot consider a claim contained within a petition for writ of habeas corpus

21  until the petitioner has exhausted available state court remedies.  28 U.S.C. §2254(b); Vasquez v.

22  Hillery, 474 U.S. 254, 275 (1986).  In addition, a petition containing both exhausted and unexhausted

23  claims may not be adjudicated by a federal court and must be dismissed unless the petitioner cleanses

24  the petition of all unexhausted claims.  Rose v. Lundy, 455 U.S. 509, 510 (1982).

25      A claim for habeas relief consists of both fact and law, and both must be submitted to the state

26  courts to permit them a fair opportunity to resolve the claim.  Rose, 455 U.S. at 510; Williams v.

27  Hacker, 463 F.2d 234 (9th Cir. 1972); Anderson v. Harless, 459 U.S. 4, 6 (1982).  The habeas petitioner

28  must have "fairly presented" the "substance" of his federal habeas corpus claim to the state courts.

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1  Anderson, 459 U.S. at 6; Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). It is not enough that all the facts

2  necessary to support the federal claim were before the state court or that a somewhat similar state law

3  claim was made. Anderson, 459 U.S. at 6. The "fair presentation" requirement is only satisfied when

4  the claim has been presented to the highest state court by describing the operative facts and legal theory

5  upon which the federal claim is based. Id.; Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982). "If a

6  petitioner presents new legal theories or new factual allegations in federal court that transform his claim

7  or cast it in a significantly different light,' the claim is not exhausted." Gagne, 835 F.2d at 9.

8  Moreover, a claim is not exhausted if it was presented to the highest state court in a procedurally

9  defective manner. Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

10      When a habeas petitioner moves from state court to federal court, a change in the operative legal

11  theory of a claim from a state-law basis to a federal-law basis creates a new claim which must be

12  exhausted in state court. Duncan v. Henry, 513 U.S. 364 (1995); see also Johnson v. Zenon, 88 F.3d

13  828 (9th Cir.). In Duncan, the Supreme Court stated:

14          If state courts are to be given the opportunity to correct alleged violations
           of prisoners' federal rights, they must surely be alerted to the fact that the
15          prisoners are asserting claims under the United States Constitution.

16  Duncan, 513 U.S. at 365-66. The inmate in Duncan framed his claim before the state court that an

17  evidentiary ruling at trial violated state law; he did not apprise the court that he was also denied due

18  process under the Fourteenth Amendment. Id. 513 U.S. at 364-65. Noting that the "mere similarity" of

19  a claim is insufficient to exhaust state court remedies, the Court explained:

20          The state court, when presented with respondent's claim of error under
           the California Evidentiary Code, understandably confined its analysis to
21          the application of state law.

22  Id., 513 U.S. at 366. The Ninth Circuit similarly stated:

23          After Duncan, Tamapua's 'essentially the same' standard is no longer
           viable. If a petitioner fails to alert the state court to the fact that he is
24          raising a federal constitutional claim, his federal claim is unexhausted
           regardless of its similarity to the issues raised in the state court.
25

26  Johnson, 88 F.3d at 830. Therefore, to meet the exhaustion requirement under Duncan and Johnson, the

27  petitioner must present the identical claim to the federal court, both legally and factually, as he

28  presented to the state courts.

Comparing DAVIS' state court claims with his federal court claims demonstrates that some the his claims have not been properly exhausted.

### 1.   DAVIS' FEDERAL COURT CLAIMS.

1.   **Ground One**: Sixth Amendment violation for ineffective assistance of counsel because counsel did not file a notice of appeal;

2.   **Ground Two**: Sixth Amendment violations for ineffective assistance of counsel based upon the following conduct:

   a)   Failure to challenge the legality of DAVIS' confession;

   b)   Failure to investigate DAVIS' low intelligence and education;

   c)   Failure to interview Webster Leonard;

   d)   Failure to challenge jurisdiction for the robbery charge;

3.   **Ground Three**: DAVIS' guilty plea was not knowing and voluntary because he was never advised as to the elements of first degree murder -- resulting in Fifth and Fourteenth Amendment and F.R.Cr.P. Rule 11 violations; and

4.   **Ground Four**: Fifth Amendment and Miranda violations because the police lied when they said DAVIS understood his rights to obtain his confession illegally.

### 2.   STATE COURT CLAIMS

DAVIS alleged the following claims for relief in the appeal of his First State Petition:

1)   DAVIS' guilty plea was not freely and voluntarily entered because he was never advised of the elements of the murder charge;

2)   Sixth Amendment violation for ineffective assistance of counsel based upon the following conduct:

   a)   Failure to interview witnesses at the scene of the crime scene;

   b)   Failure to challenge DAVIS' confession; and

3)   The trial court erred for denying an evidentiary hearing on the petition for post-conviction relief.

Exhibits G & H.

In his Second State Petition, DAVIS alleged the following claims for relief:

1)   DAVIS' plea was induced through coercion and threats;

2)   Sixth Amendment ineffective assistance of counsel because his attorney failed to challenge the robbery charge in adult court; and

3)   DAVIS' confession was obtained in violation of his Miranda rights.

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

Exhibits J & K.[1]

In his Third State Petition, DAVIS alleged the following claims for relief:

1)      DAVIS' sentence was illegal under the ex post facto clause based upon NRS 213.085;

2)      DAVIS should be sentenced to life with the possibility of parole;

3)      DAVIS' sentence is illegal under <u>Lozada v. Deeds</u>; and

4)      DAVIS sentence is illegal because DAVIS' attorney, the DA, and the judge misunderstood DAVIS' age.

Exhibit O.

### 3.      COMPARING THE FEDERAL AND STATE CLAIMS

In Ground 2, DAVIS alleges several subclaims of ineffective assistance of counsel. DAVIS alleges in subclaim 2(b), that his attorney was ineffective because he did not investigate DAVIS' low intelligence and his educational background. This subclaim has not been presented to the state courts for consideration and remains unexhausted.

DAVIS alleges in subclaim 2(c) that his attorney failed to investigate and interview Webster Davis. Before the state, DAVIS alleged that his attorney failed to interview witnesses to the crime. DAVIS has never presented the state courts with the claim that his attorney failed to interview Webster Davis, who was present when DAVIS was interviewed by the police. Accordingly, subclaim 2(c) is unexhausted and not properly before this Court.

Because subclaims 2(b) and 2(c) are unexhausted, the instant Petition is a mixed petition that is not properly before this Court. Accordingly, the Petition should be dismissed or cleansed of the unexhausted claims.

### C.      GROUNDS 1 AND 2(D) ARE BARRED FROM REVIEW IN THIS COURT ON INDEPENDENT AND ADEQUATE STATE LAW GROUNDS.

The federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and

---

[1] After counsel was appointed, DAVIS filed a First Amended Petition for a Writ of Habeas Corpus. Exhibit L. Although DAVIS purportedly added grounds in that amendment, two of the grounds are more appropriately interpreted as statements of cause to excuse a procedural default. The other three grounds simply realleged the claims that had been raised in the original Second State Petition. Cf. Exhibits J & K to Exhibit L. The grounds alleged in the Amendment include: (1) DAVIS' Second Amended Petition should not be dismissed because Nevada does not regularly enforce its procedural bars; (2) The grounds raised in the Second Amended Petition are new grounds and therefore should be heard on the merits; (3) DAVIS did not waive his right to appeal; (4) Miranda violation; and (5) DAVIS' plea was involuntary.

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1   adequate to support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 727, 731 (1991).  This rule

2   applies whether the state law ground is substantive or procedural and whether the default was caused by

3   a failure to raise a claim at trial, a failure to raise a particular claim on appeal, or a failure to appeal at

4   all.  <u>Id.</u> at 750.

5   　　　　　　　In all cases in which a state prisoner has defaulted his federal claims in
6   　　　　　　　state court pursuant to an independent and adequate state procedural rule,
　　　　　　　federal habeas review of the claims is barred unless the prisoner can
7   　　　　　　　demonstrate cause for the default and actual prejudice as a result of the
　　　　　　　alleged violation of federal law, or demonstrate that failure to consider the
8   　　　　　　　claims will result in a fundamental miscarriage of justice.

　　<u>Id.</u>
9
10   　　　　　A habeas petitioner who has been procedurally defaulted from raising his federal claims in a

11   state court may nonetheless obtain review of those claims in a federal court only if he can demonstrate

12   cause for the procedural default and actual prejudice attributable thereto.  <u>Murray v. Carrier</u>, 477 U.S.

13   478, 485 (1986).  To demonstrate cause for a procedural default, the prisoner must be able to "show that

14   some <u>objective</u> factor <u>external</u> to the defense impeded" his efforts to comply with the state procedural

15   rule.  <u>Id.</u> at 488 (emphasis added).  For cause to exist, the external impediment must have actually

16   <u>prevented</u> a petitioner from raising the claim.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991).

17   　　　　　In establishing prejudice from a procedural default, a habeas petitioner bears:

18   　　　　　　　the burden of showing not merely that the errors [complained of]
　　　　　　　constituted a **possibility** of prejudice, but that they worked to his **actual**
19   　　　　　　　and substantial disadvantage, infecting his entire [proceeding] with errors
　　　　　　　of constitutional dimension.

20   <u>White v. Lewis</u>, 874 F.2d 599, 603 (9th Cir. 1989) citing <u>United States v. Brady</u>, 456 U.S. 152, 170

21   (1982) (emphasis in original).  If a petitioner fails to show cause, however, the court need not consider

22   whether he suffered actual prejudice.  <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n. 43 (1982); <u>Roberts v. Arave</u>,

23   847 F.2d 528, 530 (9th Cir. 1988).

24   　　　　　DAVIS presented Ground 1 to the state courts in his Second State Petition.  Exhibit L, at p. 5.

25   DAVIS also presented Ground 2(d) in his Second State Petition.  Exhibit J, at p. 14-15.  In considering

26   DAVIS' Second State Petition, the Nevada Supreme Court determined that the petition was successive

27   and his claims were procedurally defaulted.  Exhibit Q.

28   　　　　　　　In his habeas petition, appellant challenged the legality of his
　　　　　　　confession, charging that his Miranda rights has been violated; he claimed

his counsel had been ineffective for failing to advise him regarding his right to appeal and for failing to move to dismiss a robbery charge; and he asserted that his plea was coerced and involuntary.

Our review of the records on appeal reveals that the district court did not err in denying the petition. Appellant's petition was successive, and he failed to demonstrate good cause for raising claims which he had previously raised or for raising claims which he could have raised in a direct appeal or in a prior petition. And appellant failed to demonstrate prejudice. <u>See</u> NRS 34.810(2)(b). (providing that the district court shall dismiss a petition if the claims could have been raised in prior proceedings or if the petitioner raises again claims which were adjudicated in a prior petition). Thus, appellant's petition was procedurally barred.

Exhibit Q, at p.2. Under Nevada law, a successive or second petition can be dismissed. NRS §§34.745(3) and 34.810(2). Because Grounds 1 and 2(c) were dismissed on independent and adequate state law grounds, those claims are procedurally barred from review in this Court. Accordingly, Grounds 1, and 2(d) should be dismissed. [2]

### IV.

### <u>CONCLUSION</u>

Grounds 2(b) and 2(c) have never been presented to the Nevada courts for consideration. The instant Petition therefore a mixed petition containing both exhausted and unexhausted claims. Under the total exhaustion rule of <u>Rose v. Lundy</u>, the instant Petition must be dismissed. In addition, Grounds 1 and 2(d) are procedurally barred from review in this Court on independent and adequate state law grounds. Accordingly, Grounds 1, and 2(d) should be dismissed with prejudice.

DATED this 16th day of June, 1999.

FRANKIE SUE DEL PAPA
Attorney General

By: _Rene L. Hulse_
RENE L. HULSE
Deputy Attorney General

---

[2] Ground Four was also presented to the state courts in DAVIS' Second State Petition. Exhibits J & L. On April 16, 1999, Respondents were served with DAVIS' Motion to Dismiss Ground Four Argument As Moot. Although the Court has not as of this date served Respondents with a ruling on that Motion, Respondents are not addressing Ground Four on the assumption that the Court will grant DAVIS' request. However, if Ground Four is not dismissed pursuant to DAVIS' request, that claim should be dismissed on independent and adequate state law grounds pursuant to the state court's ruling that the Second State Petition was successive. <u>See</u> Exhibit Q.

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I am an employee of the Office of the Attorney General of the State of Nevada

3  and that on the 16th day of June, 1999, I served the foregoing MOTION TO DISMISS PETITION FOR

4  A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254 BY A PERSON IN STATE

5  CUSTODY by mailing a copy thereof addressed to:

6

7  JIMMIE DAVIS, NDOP #27362
   NEVADA STATE PRISON
   P.O. BOX 607

8  CARSON CITY, NEVADA  89702

9

10

11      An employee of the Nevada
        Attorney General's Office

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorney General's Office
555 E. Washington, Suite 3900
Las Vegas, NV 89101

DISTRICT COURT

CLARK COUNTY, NEVADA

\* \* \* \* \*

THE STATE OF NEVADA,          )
                              )      Case No. C85078
              Plaintiff,      )      Dept. No.   IV
-vs-                          )      Docket:   "C"
                              )
JIMMIE DAVIS,                 )
                              )
              Defendant.      )
_____     )


REPORTER'S TRANSCRIPT

OF

PLEA


BEFORE THE HONORABLE EARLE W. WHITE, JR., DISTRICT JUDGE

Wednesday, October 12, 1988

9:00 A.M.


APPEARANCES:

         For the State:        WILLIAM P. HENRY
                               Deputy District Attorney

         For the Defendant:    STEPHEN J. DAHL
                               Deputy Public Defender
                                       &
                               DAVID S. GIBSON
                               Deputy Public Defender


Reported by:  LISA BRENSKE, C.S.R. No. 186
              Official Court Reporter

1          LAS VEGAS, CLARK COUNTY; WEDNESDAY, OCTOBER 12, 1988

2

3                          P R O C E E D I N G S

4

5          THE COURT:  C85078, Jimmie Davis.  The record

6    will show the presence of the defendant, his counsel, Mr.

7    Gibson and Mr. Dahl, and Mr. Henry for the State.

8          Mr. Henry.

9          MR. HENRY:  Your Honor, we have a proposed

10   resolution.  The defendant right now stands charged in an

11   Information with two counts, murder with use of a deadly

12   weapon and robbery with use of a deadly weapon.  Before I

13   describe the negotiations I should inform the court that I

14   do not believe that he is properly charged with robbery with

15   use of a deadly weapon.  At the preliminary hearing stage I

16   initially believed him to be 16.  One of his attorneys

17   inadvertently told me he was 18.  Because of that I

18   proceeded against him with an amended complaint charging him

19   with robbery with use of a deadly weapon and he was held to

20   answer.

21          After he was held to answer I've had

22   discussions with his counsel and conducted some

23   investigation and I believe him to be 16.  And as I

24   understand the law now although a person of any age can

25   originally be charged in the adult courts with murder, for

1    any other crime even if it was committed during the

2    murderous transaction he has to be charged originally in

3    juvenile court.

4              THE COURT:  He has to be certified.

5              MR. HENRY:  Therefore initially I'd move to

6    dismiss Count II and I want the record to reflect and I

7    believe that his counsel will agree on the record that the

8    dismissal of Count II in no way has anything to do with the

9    negotiation and is not consideration.

10             Having said that --

11             THE COURT:  That's jurisdictional.

12             MR. HENRY:  Yes.

13             THE COURT:  I will grant that motion.  Count II

14   is ordered dismissed for that reason.

15             MR. HENRY:  Having said that, the proposed

16   negotiation would be that the defendant plead to first

17   degree murder without the use of a deadly weapon as a lesser

18   included offense of Count I and stipulate that the

19   punishment for that first degree murder would be life

20   without the possibility of parole in the Nevada State

21   Prison.

22             MR. DAHL:  That's correct.  This plea is being

23   made pursuant to N.R.S. 174.065, the party agrees to a

24   degree of crime if there's separate degrees of crime, and

25   also in the case of murder stipulate to a punishment less

```
 1      than death.  And the other understanding is, Your Honor,

 2      that the State will not go down and try to certify our

 3      client on the robbery and bring him back.  Those charges

 4      will not be pursued any further.

 5                  THE COURT:  All right.  Mr. Davis, did you hear

 6      what's been said?

 7                  THE DEFENDANT:  Yes.

 8                  THE COURT:  And are you in agreement with

 9      what's been said?

10                  THE DEFENDANT: Yes.

11                  THE COURT:  Those negotiations, you've

12      discussed these with your lawyers Mr. Gibson and Mr. Dahl?

13                  THE DEFENDANT: Yes.

14                  THE COURT:  And there is no one who is forcing

15      you to do this, to enter a plea of guilty, are they?

16                  THE DEFENDANT:  No.

17                  THE COURT:  With respect to Count I is there

18      going to be any amended pleading filed?

19                  MR. HENRY:  Your Honor, I had not prepared one.

20      I just move to strike the penalty allegation, the penalty

21      enhancement allegation of use of a deadly weapon.

22                  THE COURT:  That will be the order then.

23                  As to Count I charging you with murder, what is

24      your plea?

25                  THE DEFENDANT:  Guilty.
```

1           THE COURT:  Now, the crime of murder you can be

2    punished by life with or without the possibility of parole

3    and you understood that you've agreed to the penalty be life

4    without the possibility of parole?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And you're in agreement with that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  You discussed this matter and you

9    do that freely and voluntarily?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Has anybody threatened you or

12   anybody close to you to make you plead guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Has anybody promised you leniency

15   or any special treatment to get you to plead?

16          THE DEFENDANT:  No.

17          THE COURT:  By entering a plea of guilty you're

18   surrendering that means giving up certain constitutional

19   rights.

20          You have the right to a speedy and public trial

21   by an impartial jury free of pretrial publicity at which

22   time it's the burden of the prosecution to prove your guilt

23   beyond a reasonable doubt.

24          You have a right to confront the witnesses

25   against you and cross-examine them.  You have a right to

1    compel witnesses to attend court to testify on your behalf.

2                     You have a right to testify.  You may refuse to

3    testify in which event the prosecution may not comment on

4    that fact in front of the jury.

5                     You have the right to appeal to the Supreme

6    Court of Nevada and you have the right to the assistance of

7    a lawyer during all of these proceedings.

8                     Do you understand all of these rights?

9                     THE DEFENDANT:  Yes.

10                     THE COURT:  Do you understand that you had a

11    trial date that's been set in this matter in November and at

12    that time your rights with respect to trial would be fully

13    respected?  Do you understand that?

14                     THE DEFENDANT:  Yes.

15                     THE COURT:  Do you know that by pleading guilty

16    you're giving up those rights?

17                     THE DEFENDANT:  Yes.

18                     THE COURT:  And knowing that you have these

19    rights do you still wish to plead guilty?

20                     THE DEFENDANT:  Yes.

21                     THE COURT:  Are you pleading guilty because in

22    truth and in fact you are guilty?

23                     THE DEFENDANT:  Yes.

24                     THE COURT:  Would you tell me then what

25    happened on July the 31st that causes you to plead guilty

1       this morning to murder in the first degree.

2                   THE DEFENDANT:  The young lady came to sell a

3       gun in an apartment on Britz Circle or whatever.  She came

4       in, she set the gun on the counter.  She asked me if I would

5       pay $400 and I picked up the gun and I told her why $400 and

6       she told me she had bullets for the gun too.  She gave me

7       the bullets, I loaded the gun.  I cocked the trigger,

8       pointed the gun at her and told her to lower the price.  She

9       didn't lower the price to 75 and as I put the gun down -- as

10      I closed the trigger the gun shot.

11                  MR. HENRY:  Your Honor --

12                  MR. GIBSON:  He's not finished, Mr. Henry.

13                  THE DEFENDANT:  And the gun shot.  Before the

14      gun shot she asked 75 and I was trying to get the gun for

15      nothing and I was trying to keep the gun -- from her

16      retrieving the gun from me which it was hers at first.

17                  THE COURT:  Mr. Henry.

18                  MR. HENRY:  Your Honor, if I might.  The

19      defendant I believe the day after he committed this crime in

20      the presence of his uncle and after having been given his

21      Miranda rights by a North Las Vegas detective made a written

22      statement to the North Las Vegas detective.  And to

23      paraphrase what he said, as I recall he said that the victim

24      Brittain Gelabert came in and offered to sell him a gun, a

25      pistol, a revolver for a hundred dollars; that she took the

```
 1    pistol out and put it on the counter in front of him; out of

 2    her purse -- she took the bullets out of her purse and laid

 3    them down.  That he picked up the pistol, opened the

 4    cylinder, loaded it with the bullets, closed the cylinder,

 5    cocked the gun, put his finger in the trigger guard above

 6    the trigger and pointed it at her.  She said she wanted a

 7    hundred dollars.  He told her to get out.  She said again

 8    she wanted a hundred dollars.  He told her to get out.

 9              The detective asked him, "When you were

10    pointing the cocked pistol at her did you want to get the

11    pistol from her without paying anything?"  He said yes, and

12    it was after he formed this intent that he would get the

13    pistol from her without paying anything by pointing the

14    cocked pistol at her that the pistol went off, shot her and

15    she died as a result of that and I believe he would agree to

16    this statement of the facts.

17              THE DEFENDANT:  Yes.

18              THE COURT:  Let me ask you this.  Have Mr. Dahl

19    and Mr. Gibson been representing you throughout this matter?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Is there anything that you've asked

22    them to do that they haven't done or anything that you think

23    that should have been done to prepare for the case?

24              THE DEFENDANT:  No.

25              THE COURT:  How much time have they spent with
```

1    you?  Do you have any idea how much they've visited with you

2    and talked with you?

3                    THE DEFENDANT:  A couple hours.

4                    THE COURT:  Do you feel there's anything they

5    haven't done that you want them to do?

6                    THE DEFENDANT:  No.

7                    THE COURT:  The court finds the defendant's

8    plea of guilty to be freely and voluntarily given.  I

9    further find you understand the nature of the charge, the

10   consequences of your plea and I accept it.  We'll refer this

11   matter to the Department of Parole and Probation for a

12   presentence and investigation report and set it over for the

13   entry of judgment and imposition of sentence.

14                    THE CLERK:  November 16th at 9:00.

15

16                         (The proceedings concluded.)

17

18                    *  *  *  *  *

19

20       ATTEST:  Full, true, and accurate transcript of

21   proceedings.

22

23                         LISA BRENSKE, C.S.R. No. 186

24

25

1

# DISTRICT COURT

## CLARK COUNTY, NEVADA   FILED

\* \* \* \* \*

ORIGINAL   MAY 26   9 58 AM '92

_Loretta_
CLERK

| | |
|---|---|
| THE STATE OF NEVADA, | ) |
| | ) Case No. C85078 |
| Plaintiffs, | ) Dept. No.  IV |
| | ) Docket:  "C" |
| -vs- | ) |
| | ) |
| JIMMIE DAVIS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPORTER'S TRANSCRIPT

### OF

### SENTENCING

## BEFORE THE HONORABLE EARLE W. WHITE, JR., DISTRICT JUDGE

Monday, December 12, 1988

9:00 A.M.

APPEARANCES:

    For the State:        GARY R. BOOKER
                              Deputy District Attorney

    For the Defendant:    DAVID S. GIBSON
                                Deputy Public Defender

Reported by:  Lisa Brenske, C.S.R. 186
                 Official Court Reporter

479

1        LAS VEGAS, CLARK COUNTY; MONDAY, DECEMBER 12, 1988

2

3                P R O C E E D I N G S

4

5            THE COURT:  C85078, State versus Jimmie Davis.

6    Record will show the presence of the defendant, counsel Mr.

7    Gibson, Mr. Booker for the State.

8                On October 12, 1988 the court accepted the

9    defendant's plea of guilty to Count I of an Information

10   charging first degree murder as a lesser included offense.

11               Is there any legal cause or reason why judgment

12   should not be pronounced?

13               MR. GIBSON:  No, Your Honor.

14               THE COURT:  By virtue of your plea of guilty

15   you're adjudged guilty of first degree murder.

16               Does the Department of Parole and Probation

17   have anything to add?

18               THE OFFICER:  No, Your Honor.

19               THE COURT:  Does the district attorney have

20   anything to say?

21               MR. BOOKER:  No, Your Honor.  We would stand on

22   the record as it is and go with the stipulation in this

23   matter.

24               THE COURT:  Mr. Davis, do you have anything to

25   say, any information to present in mitigation of punishment

480

1    before I impose sentence?

2              THE DEFENDANT:  Only thing I can say is I'm

3    sorry.

4              THE COURT:  Mr. Gibson.

5              MR. GIBSON:  Your Honor, we have negotiated

6    this matter and stipulated between the district attorney and

7    our office as to the sentence and I informed the court of

8    that.  I just would point out for the record that this is a

9    16 year old young man who has no serious past and

10   hopefully -- we've discussed GED and things that he can

11   accomplish while he's in the prison system and hopefully he

12   will avail himself to those things and I'd submit it on

13   that.                                    .

14             THE COURT:  It appears to the court that based

15   on the evaluation that the stipulated penalty taking into

16   consideration the age of the defendant, apparently that you

17   got started into the wrong kind of business and lost

18   complete respect.  You stated you're sorry now.  At least

19   the evaluation shows a lack of remorse.  I believe that the

20   recommendation is well-taken in accordance with the

21   stipulation and I believe that it is justified.

22             So in addition to the 20 dollar administrative

23   assessment fee you're sentenced to the Nevada Department of

24   Prisons to a term of life without the possibility of parole.

25             I believe that there's a hundred eight day

                                       .   481

1   computation.

2              MR. GIBSON:  Hundred thirty-four now.

3              THE COURT:  All right.  134.  That's agreeable.

4   That will be the order.

5              I believe we have other counts to dispose of?

6              MR. GIBSON:  Yes, Your Honor.

7              THE COURT:  State moving to dismiss?

8              MR. BOOKER:  Yes, it is, Your Honor.

9              THE COURT:  Motion is granted.

10

11                       (The proceedings concluded.)

12

13                       *  *  *  *  *

14

15      ATTEST:  Full, true, and accurate transcript of

16   proceedings.

17

18                       LISA BRENSKE, C.S.R. No. 186

19

20

21

22

23

24

25                                              482

<pre>
1                      DISTRICT COURT

2              CLARK COUNTY, NEVADA        FILED

3                      -----

4   JIMMIE DAVIS,              )           Dec 20  4 34 PM '89
                               )
5        Defendant-Petitioner, )           Laila Surman
                               )                CLERK
6   vs.                        )
                               )
7   THE STATE OF NEVADA,       )           CASE NO.  C85078
                               )           DEPT. NO.  IV
8        Plaintiff-Respondent, )           DOCKET    "C"
    _____)
9

10                  PETITION FOR POST-CONVICTION
                    RELIEF (NRS 177.315 et seq.)
11
                    Date of Hearing:  1/15/90
12                  Time of Hearing:
                                      17
13  INSTRUCTIONS:

14       (1)  This Petition must be legibly handwritten or type-
    written, signed by the defendant/petitioner and verified.
15       (2)  Additional pages are not permitted except where noted
    or with respect to the facts which you rely upon to support your
16  grounds for relief.  No citation or authorities need be
    furnished.  If briefs or argument are submitted, they should be
17  submitted in the form of a separate memorandum.
         (3)  If you want an attorney appointed, you must complete
18  the Affidavit in Support of Request to Proceed in Forma Pauperis.
    You must have an authorized officer at the prison complete the
19  Certificate as to the amount of money and securities on deposit
    to your credit in any account in the institution.
20       (4)  You must include all grounds or claims for relief
    which you may have regarding your conviction or sentence.
21  Failure to raise all grounds in this Petition may preclude you
    from filing future petitions challenging your conviction and
22  sentence.
         (5)  You must allege specific facts supporting the claims
23  in the Petition you file seeking relief from any conviction or
    sentence.  Failure to allege specific facts rather than just
24  conclusions may cause your petition to be dismissed.
         (6)  When the Petition is fully completed, the original and
25  one (1) copy must be filed with the Clerk of the State District
    Court for the county in which you were convicted or sentenced with-
26  in one (1) year after the final judgment of conviction, or within
    one (1) year after the final decision in your appeal if you
27  appealed your conviction.  One (1) copy must be mailed to the
    District Attorney of the county in which you were convicted or to
28  the original prosecutor.  Copies must conform in all particulars
</pre>

RECEIVED

COUNTY CLERK

to the original submitted for filing.

(7)  Failure to follow these instructions may result in dismissal of your petition.  Failure to state clearly and pre- cisely the grounds upon which you make your claim for relief, and to state clearly and precisely the facts and circumstances which give rise to your claim, may result in dismissal of your petition.

<u>PETITION</u>

1.  Did you personally prepare this Petition?  If not, who did?  Give name and, if a prisoner, his prison number: _____

Anthony C. Green  #26544

2.  Name and location of Court which entered the Judgment of Conviction under attack: <u>Eighth Judicial District Court,</u> <u>Department IV, Las Vegas, Nevada</u>

3.  Date of Judgment of Conviction: <u>December 12, 1989</u>

4.  Length of sentence: <u>Life Without Possibility of</u> <u>Parole.</u>

5.  Nature of offense involved (all counts): <u>First</u> <u>Degree Murder</u>

_____

6.  What was your plea?  (check one):

a.  Not Guilty ___  b.  Guilty <u>X</u>  c. Nolo Contendere ___

If you entered a guilty plea to one count or indictment or information, and a not guilty plea to another count or indictment or information, or if the guilty plea was negotiated, give details: <u>Petitioner was originally charged with First Degree</u> <u>Murder and Robbery, both with the Use of Deadly Weapon.  Petitioner</u> <u>was plea to the First Degree Murder charge and the use of a</u> <u>deadly weapon was stricken.  The Robbery with the use was dismiss-</u> <u>ed beforehand as being inappropriate as Petitioner was only 16</u> <u>and had not been certified as to that charge.</u>

-2-

7. Kind of trial (check one):

   a.  Jury ___    b.  Judge without jury _X_

8. Did you testify at the trial?  Yes ___    No _X_

9. Did you appeal from the Judgment of Conviction?

   Yes ___    No _X_

10. If you did appeal, answer the following:

   a.  Name of Court: _____ n/a _____

   b.  Result: _____ n/a _____

   c.  Date of result: _____ n/a _____

11. Other than a Direct Appeal from the Judgment of Conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any court, State or Federal?   Yes ___    No _X_

12. If your answer to No. 11 was "Yes" give the following information:

   a.  (1)  Name of Court: _____ None _____

_____

     (2)  Nature of proceeding: _____ n/a _____

_____

_____

     (3)  Grounds raised: _____ n/a _____

_____

_____

_____

     (4)  Did you receive an evidentiary hearing on your petition, application or motion?   Yes ___    No _X_

     (5)  Result: _____ n/a _____

     (6)  Date of Result: _____ n/a _____

-3-

(7)   If known, citations of any written opinion or orders entered pursuant to such result: _____ n/a _____

_____

b.   As to any second petition, application or motion, give the same information:

(1)   Name of Court: _____ None _____

_____

(2)   Nature of proceeding: _____ n/a _____

_____

_____

(3) Grounds raised: _____ n/a _____

_____

_____

_____

(4)   Did you receive an evidentiary hearing on your petition, application or motion?   Yes ___   No _X_

(5)   Result: _____ n/a _____

(6)   Date of result: _____ n/a _____

c.   As to any third petition, application or motion, give the same information:

(1)   Name of Court: _____ None _____

_____

(2)   Nature of proceedings: _____ n/a _____

_____

_____

(3)   Grounds raised: _____ n/a _____

_____

_____

-4-

       (4)   Did you receive an evidentiary hearing on your petition, application or motion?   Yes ____   No _X_

       (5)   Result: _____ n/a _____

       (6)   Date of result: _____ n/a _____

   d.   Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

       (1)   First petition, application or motion?

          Yes ____   No _X_

       (2)   Second petition, application or motion?

          Yes ____   No _X_

       (3)   Third petition, application or motion?

          Yes ____   No _X_

   e.   If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____ No petition, application or motion was filed. _____

_____

_____

_____

_____

_____

   13.   Has any ground being raised in this Petition been previously presented to this or any other Court by way of petition fir hadeas corpus, motion or application?  If so, identify:

     a.   Which of the grounds are the same: ___ None ___

_____

_____

-5-

1      b.   The proceedings in which these grounds were raised:

2                              n/a

3

4    14.   State concisely every ground on which you claim that

5  you are being held unlawfully.  Summarize briefly the facts sup-

6  porting each ground.  If necessary, you may attach pages stating

7  additional grounds and facts supporting same:

8      a.   GROUND ONE:   PETITIONER'S PLEA OF GUILTY WAS NOT

9  KNOWINGLY AND UNDERSTANDINGLY ENTERED IN THAT IT WAS BASED UPON

10 MISREPRESENTATIONS, FEAR AND COERCION

11

12      SUPPORTING FACTS (Tell your story briefly without

13 citing cases or law):  Petitioner's guilty plea resulting in a

14 life sentence without the possibility of parole for first degree

15 murder was not understandingly and knowingly entered in that the

16 plea was based upon the misrepresentations, force, trickery and

17 coercion of counsel.

18   During the preliminary stages of the proceedings, Petitioner

19 met with his counsels, Stephen Dahl and David Gibson, Deputy

20 Public Defenders, during one of two very short meetings (approx-

21 imately 10 to 20 minutes long) for what   (Continued on Page 6a)

22      b.   GROUND TWO:  PETITIONER'S SENTENCE OF LIFE WITHOUT

23 POSSIBILITY OF PAROLE IS VIOLATIVE OF THE CRUEL AND UNUSUAL

24 PUNISHMENT PROVISIONS OF THE NEVADA AND UNITED STATES CONSTITU_

25 TIONS

26      SUPPORTING FACTS (Tell your story briefly without

27 citing cases or law):  Petitioner repeats and realleges Ground

28 One, and all Supporting Facts contained therein, as if the same

1   Petitioner believed was to discuss the case.  At this session,
2   and despite the fact that both counsels believed the shooting was
3   accidental (see Exhibit A), and without Petitioner's parents or
4   any other guardian being present or made aware of the meeting or
5   counsels' intentions, Mr. Dahl told Petitioner, who at the time
6   was a very scared 16 year old who is illiterate to the mechanics
7   of the criminal justice system, to plead guilty to first degree
8   murder because, as Mr. Dahl made Petitioner believe, with him
9   being black and the victim being a young white female, he (Peti-
10  tioner) **would** get an all-white jury and they (the jury) **would**
11  give him the death penalty (counsel made these fraudulent repre-
12  sentations while being fully aware that neither Nevada case law
13  or the circumstances of the case or those of Petitioner would al-
14  low such severe punishment).  Counsel also made Petitioner believe
15  that although he was pleading to "life without" the judge would
16  change the sentence to "life with" because of the circumstances
17  of the crime and Petitioner's age.  Counsel also represented to
18  Petitioner that he (counsel) would file "something" in Court be-
19  fore time ran out.  During this ordeal, counsel never took the
20  time to fully explain to Petitioner as to what exactly "life with-
21  out" entailed.  Additionally, counsel failed to explain to
22  Petitioner the elements of the crime charged, for example, what
23  exactly "malice aforethought" meant, and that by pleading guilty
24  Petitioner was admitting that he intentionally killed the victim
25  despite his constant pleas and the witnesses statements to the
26  contrary.  See Exhibits A (pp. 10 and 18), B, C and D.  Once
27  Petitioner found out the full and true extent of counsels' mis-
28  representations his family tried to no avail to obtain different

-6a-

1 | counsel so that Petitioner could withdraw his plea which had he
2 | known beforehand the truth as to counsels' assertions and promises
3 | he never would have entered in the first place.  Exhibit E.
4 | ///
5 | ///
6 | ///
7 | ///
8 | ///
9 | ///
10 | ///
11 | ///
12 | ///
13 | ///
14 | ///
15 | ///
16 | ///
17 | ///
18 | ///
19 | ///
20 | ///
21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

-6b-

1   were fully set forth herein.

2   Petitioner's guilty plea resulting in a life sentence with-

3   out the possibility of parole for first degree murder is violative

4   of the Nevada and United States Constitution's cruel and unusual

5   punishment provisions in that the penalty of life without the

6   possibility of parole is disproportionate to the offense and

7   circumstances of the instant case and those   **(Continued on Page 7a)**

8   c.   GROUND THREE: THE SENTENCE OF LIFE WITHOUT THE

9   POSSIBILITY OF PAROLE IMPOSED ON PETITIONER VIOLATED HIS RIGHTS

10  TO EQUAL PROTECTION OF LAW

11

12  SUPPORTING FACTS (Tell your story briefly without

13  citing cases or law): Petitioner repeats and realleges Ground

14  One, and all Supporting Facts contained therein, and Ground Two,

15  and all Supporting Facts contained therein, as if the same were

16  fully set forth herein.

17  Petitioner's guilty plea resulting in a life sentence with-

18  out the possibility of parole for first degree murder violates

19  the Equal Protection Clause of the Nevada and United States

20  Constitutions in that it is a sentence more severe than that

21  imposed on similar defendants in like   **(Continued on Page 7b)**

22  d.   GROUND FOUR: PETITIONER'S PLEA OF GUILTY TO FIRST

23  DEGREE MURDER WAS ENTERED WITHOUT THE EFFECTIVE ASSISTANCE OF

24  COUNSEL BEFORE, DURING AND AFTER THE NEGOTIATIONS.

25

26  SUPPORTING FACTS (Tell your story briefly without

27  citing cases or law): Petitioner repeats and realleges Ground

28  One, and all Supporting Facts contained therein, Ground Two, and

-7-

1    of Petitioner and thus amounted to the infliction of cruel and
2    unusual punishment.  Despite the events leading up to the shoot-
3    ing and unfortunate demise of the victim, the end results were
4    nothing more than a tragic accident.  Petitioner was very
5    apologetic and distraught upon learning that the victim was shot
6    and immediately tried to help her before panicking.  Exhibits
7    A and D.  Petitioner was also the one to call the police when he
8    heard that they were looking for him, Exhibit F, and obeyed the
9    officer's advice and came to the station and gave a voluntary
10   statement explaining the events leading up to the accidental
11   discharge of the weapon.  Exhibit C.  Yet, despite the circum-
12   stances described above and the crime's lack of brutality or
13   heinousness, and overlooking the implied accidental nature of
14   the shooting, the Court imposed the severest of penalties and
15   sentenced the 16 year old Petitioner to the rest of his life in
16   prison without any possibility of parole or release consideration
17   due to any subsequent rehabilitative accomplishments of
18   Petitioner.
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

-7a-

circumstances as those of Petitioner.  Normally, in this State
individuals involved in non-brutal or non-heinous homicides en-
joy the benefit of receiving a sentence of life with the
possibility of parole, or a sentence of less than life, while
life without the possibility of parole is reserved for the more
brutal killings and where those accused and convicted are either
a menace to society or they are people lacking any redeemable
qualities or traits.  However, here in a case where the possi-
bility of an accidental shooting existed, and where the crime
was totally devoid of any degree of brutality or heinousness,
and where the Petitioner had some redeemable qualities and traits,
and if nothing else was of a very young age, a sentence of life
without the possibility of parole was imposed contrary to normal
custom and practice.

If given the benefit of a hearing, Petitioner will show
the Court that in no case in this State has a defendant received
a sentence of life without the possibility of parole under cir-
cumstances similar to those presented in this instant case.
Yet, in every case where such a sentence was imposed each one
had noticeable aggregating circumstances.  Since the citation of
legal authority is discouraged in petitions of this nature,
Petitioner would ask the Court to compare this case to that of
the defendant in State of Nevada v. Morris Junior West, Case No.
C82279, Department No. VI, Clark County Court and review the
case attached hereto and incorporated herein by this reference
as Exhibit G.  Both of these cases involved homicides committed
by juveniles far more severe and brutal than that involving
Petitioner and each defendant received sentences of life with the

-7b-

1   possibility of parole, as opposed to that of Petitioner where

2   the shooting was accidental and he received a life sentence

3   without the possibility of parole.

4   ///

5   ///

6   ///

7   ///

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  all Supporting Facts contained therein, and Ground Three, and

2  all Supporting Facts contained therein, as if the same were

3  fully set forth herein.

4      Petitioner's guilty plea resulting in a life sentence

5  without the possibility of parole for first degree murder was

6  obtained in violation of the Sixth and Fourteenth Amendments to

7  the United States Constitution in that  **(Continued on Page 8a)**

8      15.  If any of the grounds listed above were not previously

9  presented in any other Court, State or Federal, state briefly

10  what grounds were not so presented, and give your reason(s) for

11  not presenting them:  None of the issues were raised primarily

12  because of counsels' ineffectiveness.  Neither counsel seen fit

13  to challenge the negotiations since said negotiations originated

14  from them and the errors mentioned above were direct consequences

15  of their incompetence or lack of concern for Petitioner's rights

16  and welfare.

17      16.  Do you have any petition or appeal now pending in any

18  Court, either State or Federal, as to the judgment under attack?

19  Yes _____    No  X

20      If "Yes" state what court: _____ None

21

22      17.  Give the name and address if known of each attorney who

23  represented you in the following stages of the judgment under

24  attack herein:

25      a.  At Preliminary Hearing: David Gibson, Deputy Public

26  Defender (DPD), 309 S. Third St., Ste. 226, Las Vegas, NV  89155

27      b.  At Arraignment and plea:  David Gibson & Stephen

28  Dahl, DPDs (same address as above).

-8-

1   Petitioner was deprived of the effective assistance of counsel

2   before, during and after the entrance of the guilty plea in that

3   counsel misrepresented, coerced and tricked Petitioner into the

4   plea by making him believe he would definitely receive an all

5   white jury and the death penalty if he went to trial.  Counsel

6   did this while being fully aware that such representations were

7   contrary to existing Nevada case law and that neither the cir-

8   cumstances of the case or those of Petitioner warranted such

9   punishment.

10      Counsel failed to review the charging document with

11  Petitioner or discuss with him the facts of the case.  Counsel

12  further failed to explain to Petitioner the full extent of the

13  sentence of life without the possibility of parole or the elements

14  of the crime charged and what exactly was meant or had to be

15  proven as far as the term "malice aforethought" was concerned,

16  any defenses to the charges (such as accidental shooting), or

17  the consequences of entering plea to the charge of first degree

18  murder.  Counsel also neglected to review with Petitioner the

19  sufficiency of the State's evidence, if any, and he failed to

20  discuss with Petitioner any possible trial or plea bargaining

21  tactics or strategy.

22      Counsel also failed to confer with the parents, or other

23  legal guardian of the 16 year old Petitioner, before inducing

24  him into a plea to first degree murder and a sentence of life

25  without the possibility of parole.  Instead, not only did coun-

26  sel mislead Petitioner, counsel also fraudulently lead Petitioner

27  to believe that the judge would convert the sentence of life

28  without the possibility of parole to one of life with, and that

-8a-

1    he (counsel) would file additional pleadings on Petitioner's

2    behalf "before time ran out."

3         .     That counsel failed to perform an independent investiga-

4    tion or talk to any of the witnesses to the crime, nor did coun-

5    sel pursue any defense as to the accidental nature of the

6    shooting.

7         Because of counsel's ineffectiveness in this regard, it

8    was not possible for Petitioner to know the full consequences of

9    the plea bargaining process, or to knowingly and understandingly

10   relinquish his rights to the crime charges, or, at the very least,

11   understand the important considerations relevant to reaching the

12   important decision of pleading to first degree murder and being

13   sentence to prison for the "remainder" of Petitioner's life with-

14   out any possibility of parole.  Thus, because of counsel's

15   ineffectiveness, misrepresentations, coercions and trickery

16   counsel failed, and therefore unable, to assist Petitioner in

17   making an informed and conscious choice during the plea bargain-

18   ing process.

19        At the conclusion of the entrance of the guilty plea and

20   subsequent sentencing, counsel failed to file a direct appeal

21   challenging, at the very least, the cruel and unusual nature of

22   the penalty imposed, while knowing the same to be disproportionate

23   to crimes and persons of similar circumstances within this

24   jurisdiction.

25        As a whole,  counsel's ineffectiveness amounted to Peti-

26   tioner receiving less than reasonably competent advice during a

27   critical stage in the criminal process.

28        But for counsel's ineffectiveness, misrepresentations,

-8b-

1   coercion, trickery and unprofessional conduct and errors, the

2   results of the proceedings would have been quite different and

3   the direct prejudice suffered by Petitioner would have less than

4   that actually received.  Thus, the instant proceedings would not

5   be subject to attack and Petitioner would definitely not have

6   plead guilty to first degree murder and the rest of his entire

7   life in prison without the possibility of parole, but instead,

8   Petitioner would have insisted on trial on the charges or a plea

9   to a lesser offense or sentence.

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///