```
 1        c.  At Trial: _____n/a_____
 2  _____
 3        d.  At Sentencing: _David Gibson, DPD (same address_
 4  as above)._____
 5        e.  On Appeal: _____n/a_____
 6  _____
 7        f.  If any Post-Conviction proceeding:____n/a_____
 8  _____
 9      18.  Were you sentenced on more than one count of an indict-
10  ment or information or on more than one indictment or information
11  in the same Court and at the same time?  Yes ___    No _x__
12      19.  Do you have any further sentence to serve after you
13  complete the sentence imposed by the judgment under attack?
14  Yes ___    No _x__
15        a.  If so, give name and location of court which imposed
16  sentence to be served in the future: _____None_____
17  _____
18        b.  Give date and length of sentence to be served in
19  the future: _____None_____
20  _____
21        c.  Have you filed, or do you contemplate filing any
22  petition attacking the judgment which imposed the sentence to be
23  served in the future?    Yes ___    No _x__
24      20.  If you are not filing this Petition within one (1)
25  year after the final judgment of your conviction or the final de-
26  cision in your appeal, if any, state here good cause why not, and
27  why the Petition should be heard now: _Petition should reach_
28  the Court Clerk before the expiration of the one-year deadline.
```

-9-

1

2

3

4

5

6      WHEREFORE, Defendant-Petitioner prays that the Court grant

7 relief to which he or she may be entitled in this proceeding.

8      DATED this ⌐⁵ᵗ day of December, 1989.

9                          Respectfully submitted,

10

11                         _Jimmie Davis_

                           JIMMIE DAVIS

12                         P.O. Box 208, S.D.C.C.
                           Indian Springs, Nevada  89070

13                         Defendant-Petitioner-In Propria
                           Persona

14

15                    VERIFICATION

16 STATE OF NEVADA )
                   )  ss.
17 COUNTY OF CLARK )

18      Pursuant to NRS 15.010, under penalties of perjury, the

19 Undersigned declares that he or she is the Defendant-Petitioner

20 named in the foregoing Petition and knows the contents thereof;

21 that the pleading is true of his or her own personal knowledge,

22 except as to those matters stated on information and belief, and

23 that as to such matters he or she believes it to be true.

24      DATED this 2ⁿᵈ day of December, 1989.

25

26                         _Jimmie Davis_

                           JIMMIE DAVIS

27                         Defendant-Petitioner-In Propria
                           Persona

28 ///

                          -10-

1

CERTIFICATE OF SERVICE

2       I, the Undersigned, hereby certify pursuant to N.R.C.P. 5(b)

3 that I am over the age of 18 years and not a party to the within

4 action.  That on the _11ᵗʰ_ day of December, 1989, I served the

5 foregoing PETITION FOR POST-CONVICTION RELIEF by mailing a true

6 and correct copy thereof in a sealed envelope, upon which first

7 class postage was fully prepaid, addressed to:  DISTRICT ATTORNEY,

8 CLARK COUNTY, 200 South Third Street, Las Vegas, Nevada  89155;

9 that there is regular communication by mail between the place of

10 mailing and the place so addressed.

11

12                                     _Anthony C. Green_

                                      DECLARANT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COPY

FILED

SEP 2 11 46 AM '88

_Loretta Bowman_

**CLERK**

CASE NO. C85078

IN THE JUSTICE COURT OF NORTH LAS VEGAS TOWNSHIP

COUNTY OF CLARK, STATE OF NEVADA

STATE OE NEVADA,  )
                       )
         Plaintiff,  )
                       )
vs.                   )     Case No. 393-88FN
                       )
JIMMIE DAVIS,  )
                       )
         Defendant.  )
------------------------------)

REPORTER'S TRANSCRIPT

OF

PRELIMINARY HEARING

BEFORE THE HONORABLE JAMES B. KELLY, JUSTICE OF THE PEACE

August 25, 1988

APPEARANCES:

    For the State:               GARY BOOKER, ESQ., and
                                WILLIAM HENRY, ESQ.,
                                Deputies District Attorney

    For the Defendant:          DAVID GIBSON, ESQ.,
                                Deputy Public Defender

Reported by:  Warren G. Hans, CSR #19

EXHIBIT A

EXAMINATION INDEX

WITNESS:  ARTHUR CULLINS

| EXAM. BY: | DIRECT | CROSS | REDIRECT |
|---|---|---|---|
| MR. BOOKER: | 5 | | |
| MR. GIBSON: | | 17 | |

WITNESS: RICHARD L. WARRILOW

EXAM. BY:

| MR. BOOKER: | 20 |
|---|---|

WITNESS: GILES SHELDON GREEN

EXAM. BY:

| MR. BOOKER: | 26 | |
|---|---|---|
| MR. GIBSON: | | 30 |

WITNESS: ALFRED F. ADAMS

EXAM. BY:

| MR. BOOKER: | 32 | | |
|---|---|---|---|
| MR. GIBSON: | | 37 | |
| MR. HENRY: | | | 38 |

1  NORTH LAS VEGAS, CLARK COUNTY, NEVADA, AUGUST 25, 1988

2                          * * * *

3

4              BY THE COURT:  All right.

5              We will now call Case No. 393-88FN, State of Nevada

6  versus Jimmie Davis.

7              Let the record show that the defendant is present with

8  counsel.

9              Are both parties ready to proceed in this matter at

10 this time?

11             BY MR. GIBSON:  Defense is ready, Your Honor.

12             BY MR. BOOKER:  The State is ready, Your Honor.

13             BY THE COURT:  All right.

14             Are there any preliminary motions to be heard in this

15 case?

16             BY MR. GIBSON:  Just to exclude witnesses, Your Honor.

17             BY THE COURT:  I've been told that you have one witness

18 that you're waiting for, but other than that are all of the

19 witnesses present?

20             BY MR. BOOKER:  Correct, Your Honor.

21             BY THE COURT:  I believe that the witness you're

22 waiting for is Dr. Green; is that correct?

23             BY MR. BOOKER:  That's also correct, Your Honor.

24             BY THE COURT:  Very well.

                              -3-

1    A    Yes.

2    Q    She did back away.  How far did she back away?

3    A    To the door, by the door.

4    Q    By the door of the apartment?

5    A    Yes.

6    Q    How far was the counter inside of the house where they

7 were standing from the front door of the apartment?

8    A    About ten feet, fifteen feet.

9    Q    So, she backed away ten or fifteen feet towards the

10 front door?

11    A    Uh huh.

12    Q    Then what happened?

13    A    Then he pointed at her and it just went off.

14    Q    It just went off?

15    A    Yep.

16    Q    Did you see Jimmie cock the gun?

17    A    No.

18    Q    But, you saw him load the gun with the bullets?

19    A    Uh huh.

20    Q    When you say "uh huh" does that mean yes?

21    A    Yes.

22    Q    What happened after the gun went off?

23    A    He didn't know he shot her because he doing nothing

24 but trying to scare her; he apologized, say he was sorry.

-10-

Q    Had she regained possession of the gun at all during that ten-minute period?

A    No.

Q    And, Mr. Davis had the gun because she had given it to him; isn't that correct?

A    Yes.

Q    And, before she gave him that gun, did he threaten her in any way?

A    No.

Q    Did he force her to give him the gun in any way?

A    No.

Q    Did he threaten her with any injury to get the gun from her?

A    No.

Q    And so, then after the gun was fired and she said that she's going to die, or that she's dead, then it is your testimony that Mr. Davis stayed in the apartment for a few moments -- for awhile -- before he left?

A    Yes, because he didn't realize she was shot, and once I mentioned he shot her, he said that he was sorry to her, you know; that was it.

Q    Did he look strange to you in any way?  Did his face look strange at all?

A    Looked like, you know, like his heart dropped, you

-18-

CROSS EXAMINATION

BY MR. GIBSON:

Q    Dr. Green, was a toxicology done on this person?

A    Yes.

Q    Did it indicate any narcotics of any kind, or any

alcohol, or anything of that type?

A    I assume that you have not received a copy of it, but

I have one here if you wish, but yes we do have an alcohol of .100

gram percent, cocaine 70 nanograms per  millileter of blood,

which is a pretty low level.  Checked the blood and urine and

these were the results.

We have the evidence of cocaine and metabolic by-

products, but they are not quantative.  So, if you want a copy

of that you're welcome to it; but I only have the one copy.

Q    Doctor, you can't tell from that wound whether or

not it was accidentally inflicted, can you?

A    I can't tell what was going on behind the gun, no.

BY MR. GIBSON;  I have no further questions.

BY MR. BOOKER:  Nothing further, your Honor.

BY THE COURT:  May this witness be permanently excused?

BY MR. BOOKER:  Yes.

BY MR. GIBSON:  Yes.

BY THE COURT:  You may leave.  You're excused.

(The witness was excused.)

-30-

CROSS EXAMINATION

1

2          BY MR. GIBSON:

3      Q    Detective, in the statement isn't it true that Mr.

4  Davis indicated that the shooting was accidental?

5      A    He did state that, yes, sir.

6          BY MR. GIBSON:  Nothing further, Your Honor.

7          BY MR. HENRY:  Your Honor, I wonder if I might be

8  allowed to inquire on redirect?

9          BY MR. GIBSON:  I would object, Your Honor.

10         BY MR. HENRY:  It's within the discretion of the Court.

11         BY THE COURT:  You're asking to reopen?

12         BY MR. HENRY:  I'm not asking to reopen; I'm asking to

13  be allowed to redirect examination -- be allowed to do it

14  myself as opposed to Mr. Booker.

15         BY THE COURT:  Fine, but the redirect would be limited

16  simply to any questions he asked, and he only asked one question.

17         BY MR. HENRY:  That's what I intend to get into.

18         BY THE COURT:  Very well.

19                        *  *  *  *

20

21

22

23

24

-37-

# ADDITIONAL NAME REPORT

| CASE NO. 88-8100 | | 2. | 3. CLK. SER. NO. |
|---|---|---|---|
| CLASSIFICATION • Homicide | 5 RPT OFC SER NO • 641 | 6 NAME OF VICTIM OR PR AS ON PAGE ONE Gelabert, Brittain | |

## VICTIM-WITNESS

| 8 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 10 STAT | 11 SEX | 12 RACE | 13 ETHNIC | 14 DATE OF BIRTH |
|---|---|---|---|---|---|
| Warrilow, R. | W | M | W | | |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) | | 16 RESIDENCE PHONE | | | 17 SOCIAL SECURITY NO. |
| BUSINESS ADDRESS (CITY, STATE, ZIP) 1301 E. Lake Mead | BUSINESS NAME NLVPD | 19 BUSINESS PHONE 649-9111 | | | 20 OCCUPATION Patrol Lt. |

| 22 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 23 STAT | 24 SEX | 25 RACE | 26 ETHNIC | 27 DATE OF BIRTH |
|---|---|---|---|---|---|
| Redcay, A. | W | M | W | | |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) | | 29 RESIDENCE PHONE | | | 30. SOCIAL SECURITY NO. |
| BUSINESS ADDRESS (CITY, STATE, ZIP) 1301 E. Lake Mead | BUSINESS NAME NLVPD | 32 BUSINESS PHONE 649-9111 | | | 33 OCCUPATION Patrol |

| 35 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 36 STAT | 37 SEX | 38 RACE | 39 ETHNIC | 40 DATE OF BIRTH |
|---|---|---|---|---|---|
| DiMauro, A. | W | M | W | | |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) | | 42 RESIDENCE PHONE | | | 43. SOCIAL SECURITY NO. |
| BUSINESS ADDRESS (CITY, STATE, ZIP) 1301 E. Lake Mead | BUSINESS NAME NLVPD | 45 BUSINESS PHONE 649-9111 | | | 46 OCCUPATION Patrol |

| 48 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 49 STAT | 50 SEX | 51 RACE | 52 ETHNIC | 53 DATE OF BIRTH |
|---|---|---|---|---|---|
| Watkins, Celester | W | M | B | X | 101671 |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) 8 E. Webb #C | | 55 RESIDENCE PHONE | | | 56 SOCIAL SECURITY NO. 530687995 |
| BUSINESS ADDRESS (CITY, STATE, ZIP) | BUSINESS NAME | 58 BUSINESS PHONE | | | 59 OCCUPATION |

| 61 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 62 STAT | 63 SEX | 64 RACE | 65 ETHNIC | 66 DATE OF BIRTH |
|---|---|---|---|---|---|
| | | | | | |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) | | 68 RESIDENCE PHONE | | | 69 SOCIAL SECURITY NO. |
| BUSINESS ADDRESS (CITY, STATE, ZIP) | BUSINESS NAME | 71 BUSINESS PHONE | | | 72 OCCUPATION |

| 74 NAME (LAST, FIRST, MIDDLE OR FIRM NAME) | 75 STAT | 76 SEX | 77 RACE | 78 ETHNIC | 79 DATE OF BIRTH |
|---|---|---|---|---|---|
| | | | | | |
| ADDRESS (HOUSE NO. STREET NAME, CITY, STATE, ZIP) | | 81 RESIDENCE PHONE | | | 82. SOCIAL SECURITY NO. |
| BUSINESS ADDRESS (CITY, STATE, ZIP) | BUSINESS NAME | 84 BUSINESS PHONE | | | 85. OCCUPATION |

## SUSPECT

| 88 NAME | 89 AKA ADDITIONAL INFORMATION |
|---|---|
| ADDITIONAL SUSPECT INFORMATION — DESCRIPTION | |

| TYPE | 92 SEX | 93 RACE | 94 ETHNIC | 95 DATE OF BIRTH | 96 AGE | 97 HGT | 98 WGT | 99 HAIR | 100 EYES | 101 BLD | 102 COMP | 103 MF# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

| 105 NAME | 106 AKA ADDITIONAL INFORMATION |
|---|---|
| ADDITIONAL SUSPECT INFORMATION — DESCRIPTION | |

| TYPE | 109 SEX | 110 RACE | 111 ETHNIC | 112 DATE OF BIRTH | 113 AGE | 114 HGT | 115 WGT | 116 HAIR | 117 EYES | 118 BLD | 119 COMP | 120 MF# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

| 122 NAME | 123 AKA ADDITIONAL INFORMATION |
|---|---|
| ADDITIONAL SUSPECT INFORMATION — DESCRIPTION | |

| TYPE | 126 SEX | 127 RACE | 128 ETHNIC | 129 DATE OF BIRTH | 130 AGE | 131 HGT | 132 WGT | 133 HAIR | 134 EYES | 135 BLD | 136 COMP | 137 MF# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

| 139 NAME | 140 AKA ADDITIONAL INFORMATION |
|---|---|
| ADDITIONAL SUSPECT INFORMATION — DESCRIPTION | |

| TYPE | 143 SEX | 144 RACE | 145 ETHNIC | 146 DATE OF BIRTH | 147 AGE | 148 HGT | 149 WGT | 150 HAIR | 151 EYES | 152 BLD | 153 COMP | 154 MF# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |

NARRATIVE

SEE CONTINUATION FOR DETAILS.

EXHIBIT E

151

| DATE/TIME PROCESSED | CLK SER NO | 158 PERSON REPORTING |
|---|---|---|
| SUPERVISOR APPROVING (PRINT) | SER NO | 159 OFFICER REPORTING (PRINT) M.L. Kincaid | SER NO 541 |

# 20-30

CONTINUATION REPORT

| CASE NO. 88-8100 | | | 5 of 6 |
|---|---|---|---|
| CLASSIFICATION Homicide | RPT OFC SER NO 641 | NAME OF VICTIM OR PERSON REPORTING Gelabert, Brittain | |

On Sunday, 073188, 1715 hours, I was dispatched to 25 Rose Cir. in reference to a possible gunshot victim.

I arrived at 25 Britz Cir. and was advised that a female had been shot at that address. I exited my vehicle and observed a white female lying on the ground in front of apartment #B. The victim was lying on her right side. She was bleeding from the back, chest, and mouth. The victim took one breath and stopped breathing.

Officers Muschner and Glaizer arrived at 1719 hours. Officer Glazier protected teh scene as Officer Muschner and I searched the apartment for suspects, with negative results. I observed what appeared to be blood on the living room floor and also in the entrance way. the lvictim was lying in a large amount of blood. Approxzimately 1722 hours Mercy Medic 25 and Engine 51 from the North Las Vegas Fire Department arrived. The paramedics advised that the victim had expired. Approximately 1723 hours, Lt. Warrilow arrived and assumed command of the scen. He requested Detectives, Identification and the coroners office respond. I contacted a possible witness, Deborah Edwards. She was hysterical and I was unable to understand her. I was able to ascertain Edwards was the victim's roommate. she stated they lived on Webb Street but did not kow the numbers. She futher stated that the victim's name was possibly "Lana". I spoke with a second witness, Kim Miller. She stated she was walking northbound on Stocker when a subject known to her as "Junior" ran past her yelling, "Jimmy" had just shot a girl. She futher stated that the wea;pon used belonged to the victim and the shooting was an accident. She could ot tell me the real names of "Jr" or Jimmie". she did advised that "Junior" had a mother that lived on Webb. I had previously (072088) made a traffic stop on a female, Rita Mayfield from 8 E. Webb #C. At the time of the stop she advised her son lived at 25 Britz apt #B. Officers Gandy, Redcay , DiMauro and I went to the apartment. I contacted Celester Watkins who advised he knew the two suspect only by their street names. While we were speaking with Watkins, neigborhood kids advised that "Jimmie" was Jimmie Davis from 18 W. Webb apartment #B. We responded to the address to locate Mr. Davis. Davis was not at the address but we spoke with a female who advised "Junior" was Arthur Cullins. It should be noted I had observed a yellow Porsche normally driven by Cullins, leaving the scene of he homicide as I had arrived. The vehicle was driven by a black female. I had also on several occasoins seen Cullins at the Britz Address.

**POLICE DEPARTMENT**
City of North Las Vegas
1301 East Lake Mead Blvd.

Date:_____08-01-88_____

## PRIOR TO ANY QUESTIONING, YOU MUST UNDERSTAND THE FOLLOWING RIGHTS

1. You have the right to remain silent.
2. Anything you say can be used against you in a court of law.
3. You have the right to the presence of an attorney prior to any questioning.
4. If you cannot afford an attorney, one will be appointed to you prior to any questioning if you so desire. If you wish to waive all of the above rights, and answer questions now without an attorney present, you have the right to stop answering questions at any time during the interview.

DO YOU UNDERSTAND FULLY WHAT YOU HAVE BEEN TOLD: Ans: _Yes_ Sign: _Jimmie Davis_

### WAIVER

I can read and write the English language and I have read and understand the statement of my rights as shown above. I understand that I have the right to remain silent, that anything I say can be used against me in a court of law, that I have the right to the presence of an attorney before any questioning, that if I cannot afford an attorney one will be appointed to me prior to any questioning, if I so desire.

I hereby waive my rights as shown above and I am willing to answer questions and make a formal statement.

I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.

Witness: _Al Adams_

Signed: _Jimmie Davis_

Witness:_____

I, _Jimmie Davis_, first having been duly informed of my rights by _Det. Adams_, as shown above, do hereby make the following statement freely and voluntarily and without promises of immunity or reward. My name is _Jimmie Davis_. I am _16_ years of age. I reside at _West Cliff R._, my phone number is _649-7270_.

I'm Det. Adams, I'm investigating a homicide that occured on 07-31-88 at 25 Britz #B. I'm interviewing Jimmie Davis, black male, sixteen years old. Also in the interview is Jimmie Davis's uncle, Webster Davis. Jimmie, at approx. 5:15 PM last date would you tell us where you were at?

A:      at the apt. 25 Britz Cir #B where the woman was shot.

Q:      Would you tell us who was in the apt. with you?

A:      Arthur, Ringo.

Q:      Do you know Arthur's last name?

A:      I don't know his last name?

Q:      Does he have a nickname?

A:      Yes, Junior.x

**EXHIBIT C**

20-124 (Rev. 3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

DATE __08-01-88__   Page No.___2___

STATEMENT OF:  Jimmie Davis

Q:   Was you approached in the apt. by a female?

A:   Yes.

Q:   Do you know this female?

A:   No, I've seen her before.

Q:   Was she white or black.?

A:   White or mexican.

Q:   What did she want?

A:   She wanted to sell a .38 for $100.00.

Q:   Did she show you the .38?

A:   Yes.

Q:   What did she do?

A:   She pulled it out of her purse along with three or four bullets

and laid it on the countertop.

Q:   Did you pick the gun up?

A:   Yes.

Q:   Did you open the cylinder?

A:   Yes.

Q:   Did you load the gun?

A:   Yes.

Q:   During this time were you negotiating with the white female

over the price?

A:   Yes.

Q:   Could you tell me what you were negotiating?

A:   We were negotiating to drop the price from $100.00.

Q:   Did you point the gun at the lady and ask her to leave?

A:   Yes.

Q:   Did she back away from you?

20.53:
(3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

STATEMENT OF:  Jimmie Davis

DATE ___08-01-88___  Page No. ___3___

A:    She wanted to get the gun so she could leave and she didn't
want to drop the price.

Q:    Did you point the gun at her again?

A:    Yes.

Q:    Did the gun go off?

A:    Yes.

Q:    What happened then?

A:    We panicked and ran out the house.

Q:    What did the lady do?

A:    She came out behind us and fell to the ground.

Q:    Did you say anything to the lady prior to shooting her?

A:    Yes, I tried to help her and I seen she was bleeding and I
panicked and ran out the house and got in the car and took off?

A:    Who was with you in the car?

A:    Ringo.

Q:    How old is Ringo?

A:    Sixteen or seventeen.

Q:    And you drove away with Ringo?

A:    Yes.

Q:    where did ARthur go.?

A:    I don't know, he just disappeared.

Q:    Was he in the room with you when the lady got shot?

A:    Yes.

Q:    Was Ringo in the same room when the shot occurred?

A:    Yes, he was.

Q:    You said earlier that you had picked the gun off the counter

20.5md the bullets off the counter and loaded the gun, is that correct?
(3/86)

88-8100

## POLICE DEPARTMENT
### City of North Las Vegas
### 1301 E. Lake Mead Blvd.

STATEMENT OF:    Jimmie Davis        DATE _____08-01-88_____    Page No. _____4_____

A:    Yes.

Q:    Are you familiar with a revolver pistol?

A:    No.

Q:    Could you describe the pistol to me?

A:    Black with brown handle.

Q:    Do you know the caliber?

A:    .38.

Q:    Did you happen to notice who made the gun?

A:    Smith and Wesson.

Q:    Did you notice how long the barrel was?

A:    It wasn't long, it was halfway.  Approximately four inch barrel.

Q:    When you panicked out of the house, did you take the gun with you?

A:    Yes.

Q:    What did you do with the gun?

A:    Gave it to Ringo.

Q:    do you know what Ringo did with it?

A:    We parked the car on Donna str. Apts. and he went in with it and he came back out and he took me to Cheyenne Street.

Q:    Did you want this gun from the lady?

A:    Yes.

Q:    And you said earlier in the statement that you had the gun in your hand and you told the lady to leave, is that correct?

A:    Yes.

Q:    Were you at that time trying to obtain the gun without paying her for it?

A:    Yes.

20.55
(3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

STATEMENT OF:   Jimmie Davis            DATE   08-01-88      Page No. 5

Q:     Before the shot went off, had you cocked that gun?

A:     Yes.

Q:     Did you have any intentions to shoot this lady?

A:     No, I just wanted to scare her.

Q:     You wanted the gun bad enough for her to leave and leave the
gun with you?

A:     Yes.

Q:     Do you understand that question, that you wanted the gun bad
enough that you wanted her to leave and you wanted to keep the gun?

A:     Yes, I didn't want to pay for it, I wanted to keep it.

Q:     Getting back to the negotiations when the lady first came
into the apt. did she tell you anything about how she obtained the
gun?

A:     No, she didn't.

Q:     Do you know what this woman was wearing?

A:     She had a brown purse, a white shorts set.

Q:     Is everything that we've discussed here true to the best of
your knowledge?

A:     Yes.

Q:     Do you know what color this car was that you and Ringo got
into?

A:     Reddish maroon.

Q:     Do you know the make of the car, sir?

A:     NO. But if I seen it I'd know.

Q     :Do you know whose car it was?

A:     No, I don't.

Q:     Do you know where Ringo lives?

20.55
(3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

DATE _____08-01-88_____  Page No. _____6_____

STATEMENT OF:   Jimmie Davis

A:   Over on Donna Street.

Q:   Could you show me where it is?

A:   Yes, I could show you where he lives.

Q:   Just you and Ringo got in the car and drove away?

A:   Yes.

Q:   Arthur didn't get in the car?

A:   No.

Q:   During your negotiations about the gun, did you offer the
lady any dope for the gun?

A:   No, I didn't.

Q:   Did anybody in the apt. offer her any dope for the gun?

A:   No. *Jimmie Davis*

City of North Las Vegas
1301 E. Lake Mead Blvd.

88-8100

I, ___Arthur Cullins___, am not under arrest for, nor am I being detained, for any criminal offenses concerning the events I am about to make known to ___Det. Al Adams___

Without being accused of or questioned about any criminal offenses regarding the facts I am about to state, I volunteer the following information of my own free will, for whatever purposes it may serve.

I am __18__ years of age, and I live at       9 W. Webb #A   NLVN

This is Det. Adams, I'm investigating a homicide that occured on
7-31-88 at approx. 1715 hours.  This occured at 25 Britz Cir. #B.
I'm interviewing Arthur James Cullins.  Mr. Cullins were you at 25
Britz Cir. #B last evening at approx. 5:15 PM?

A:     Yes, I was.

Q:     Who is renting this apt?

A:     A friend of mine, a black female named Rita.

Q:     Would you explain to me who was in the apt. at about that
time?

A:     Me, a friend Jimmie Davis and a friend of his, a black male
juvenile.

Q:     What is this udentified look like?

A:     He was short about 5'3 or 5'4, I cant say how much he weighs
and has a curl with the sides shorter than the top.

Q:     While the three of you were in the apt. were you approached
by anybody?

A:     Yes, a lady came in to sell a gun.

Q:     Do you know this girls name?

A:     Yes, Alana.  She stays by my grandmother. AC

have read each page of this statement consisting of ___4___ page(s), each page of which bears my signature, and
corrections, if any, bear my initials, and I certify that the facts contained herein are true and correct.

Dated at __NLVPD__, this __1st__ day of __Aug__ 19__88__

WITNESS: _____        X _Arthur Cullins_____
                                             Signature of person giving voluntary statement

WITNESS: _____

Form 20.44
(Rev. 3/85)                                          EXHIBIT D

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

DATE   08-01-88   Page No.   2

STATEMENT OF:  Arthur Cullins

Q:   Would you tell me what occurred when this lady wanted to sell
you the gun?

A:   She came in and wanted $100. for it and she dropped it to
$75.00 and Jimmie told her to drop the price lower than $75.00 and
then he loaded the gun and pointed it at her and she was approaching
him and he said to get away from him and he pointed it again at her
and told her to drop the price and then the gun just went off.

Q:   You said that Jimmie Davis loaded the gun, did the lady hand
it to him or what?

A:   No, she took it out of her purse and three or four bullets
out and laid it on the counter.

Q:   This was when Jimmie walked over and picked it up and loaded
it?

A:   She wouldn't drop the price and that's when he picked it up
and loaded it.

Q:   What kind of gun was it?

A:   .38 revolver.

Q:   What did it look like?

A:   It was black with a brown handle and bigger than a snub nose,
about a four inch barrell.

Q:   Do you know who made the gun?

A:   No.

Q:   Did you pick the gun up?

A:   I never touched it.

Q:   Where were you all at when the shot went off?

A:   She was standing by the front door, I was standing in the
dining room, Jimmie was standing about three feet from me and his

20.55
(3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

DATE 08-01-88          Page No. 3

STATEMENT OF: Arthur Cullins

friend— was standing about two feet from him.

Q:   Did you see Jimmie cock the gun?

A:   I thought it was just loaded but I didn't know it was cocked.
It just went off?

Q:   what did you do then?

A:   She fell and as she was getting back up and I said "cuz, you
shot her, you shot her". to jimmie. and he said "oh, I'm sorry."
He said that to her.

Q:   Do you think that Jimmie was trying to get the gun for nothing,
trying to scare her?

A:   Yes, cause I don't think he had the heart to shoot her and
to me he just didn't know how to handle a gun.

Q:   Had you and Jimmie discussed trying to get the gun from the
girl?

A:   No, I told you I ran out the door to get help and I talked
to Tracy in Apt. #A to get an ambulance and I told them twice.  I
was there for at least five or ten minutes before I left and I went
around to Britz Circle.

Q    :Did you tell anybody in Britz Circle what happend?

A:   Yes, I told a lady named Star .

Q    :What did you tell her?

A:   I told her this asshole Jimmie had just shot a lady.

Q:   Where did Jimmmie and this other dude go?

A:   I don't know.  They just got in a car and left.

Q    :What kind of car?

A:   It was a burgundy four door, maybe Malibu.  AC

20.55
(3/86)

POLICE DEPARTMENT
City of North Las Vegas
1301 E. Lake Mead Blvd.

DATE ___08-01-88___ Page No. ___4___

STATEMENT OF: Arthur Cullins

Q:   Did Jimmie offer any dope or anything for this gun?

A:   He offered her dope but she wanted strictly cash.

Q:   What kind of dope was he trying to offer?

A:   It was rocks but he didn't have none.

Q:   Did he have any money?

A:   Probably about twenty or thirty dollars.

Q:   Do you stay down there on 25 Britz Circle a lot?

A:   I come down there a bit, but I usually go next door at apt. A and talk to a girl, Lusteena.

Q:   Have you been offered any rewards or immunity to come in and give this statement or did you come in on your own free will?

A:   No, I just came in becuase officers came by my Aunties house and she heard my name on the news and she told me to come down here so I did.

Q:   Do you think that Jimmie Davis intentionally shot this girl?

A:   NO, I think it was an accident.  Because when he said "I'm sorry" to her it looked like his heart dropped?

A:   You think he was just trying to take the gun?

A:   No, I think he was just trying to scare her.

Q:   Is there anything else you'd like to add to this statement?

A:   NO.

Q:   Is this statement true and correct as far as you know?

A:   Yes.

Q:   Do you know where this other black juvenile lives?

A:   NO, I just know him from Donna Street crips.  All the Donna Street Crips look alike, same age and stick together. A.C.

0.55

FILED

1      **DISTRICT COURT**

2    **CLARK COUNTY, NEVADA** JAN 9   3 28 PH '94

3 JIMMIE DAVIS,

4    Petitioner,    Case No: C-85078

5 vs.         Dept No: 1V

6 THE STATE OF NEVADA   Docket No: "C "

7    Respondent,

8 ===========================/

9    Date of Hearing _2-26-92_

10    Time of Hearing _____

11     **AFFIDAVIT IN SUPPORT OF**

12    **PETITION FOR POST-CONVICTION RELIEF**

13 STATE OF NEVADA  )

14       ) ss:

15 COUNTY OF WHITE PINE )

16   I, JIMMIE DAVIS, do hearby swear under penalty of perjury

17 that the assertions of this affidavit are true.

18   1. That I Jimmie Davis am the Petitioner in the above-

19 entitled action and make this affidavit in support of my

20 Petition for Post-Conviction Relief.

21   2. That Petitioner is competent to testify and therefor

22 would be able to testify if called upon to do so and have

23 personal knowledge to the truth of the facts herein set out,

24 except to those matters stated on information and belief,

25 and as to such matters he believes the same to be true.

26   3. That Petitioner is entitled to relief sought.

27   4. That Petitioner makes this affidavit in good faith.

28   5. That Petitioner was denied Due Process of Law.

1      6. That Petitioner was denied the effective assistances
2  of counsel during plea negotiation's and plea hearing. Counsel
3  never explained to Petitioner the elements of the crime charged
4  when case law clearly states that in order for a guilty plea
5  to be accepted the defendant must know the elements of the
6  crime to which he plea's.
7      7. That Petitioner was denied effective assistances of
8  counsel when counsel failed to explain what "MALICE AFORETHOUGHT"
9  meant, and that by pleading guilty Petitioner was admitting
10 that he intentionally killed the victim despite Petitioners
11 unwaviering claim that the shooting was accidental.
12     8. That appellate counsel failed to persue or investigate
13 after being told by an eye witness that they would testify
14 to the fact that the shooting was indeed an accidental shooting.
15 Yet counsel still had a sixteen (16) year old plea guilty to
16 First Degree Murder and agree to Life in prison without the
17 possibilty of parole, knowing the Petitioner was illiterate
18 to the criminal justice system. Whitness being Arthur Cullins.
19     9. That Petitioners plea of guilt was not knowing and
20 intelligently or understandingly entered when the Courts failed
21 to canvass the Petitioner properly in open court, assuring
22 that he understood each and every element of the crime
23 before a plea of guilty could be accepted by the Court.
24     10. That Petitioner was seriously prejudiced as a result
25 of counsel's errors, omissions and counsel's failure to
26 investigate or interview witnesses and research applicable
27 law which would negate a First Degree Murder charge based upon
28 the factual circunstances surronding the case at bar, thus

1   denying Petitioner his Sixth Amendment Right to resonable

2   effective assistance of counsel.

3       11. That the records of the Plea Hearing are bare of the

4   elements of First Degree Murder therefor the Courts should

5   not have accepted the Petitioners guilty plea whereas no factual

6   statement to the Courts were made which would constitute an

7   admission to the elements of the offense charged.

8       12. That in prosecution of murder where defendant pleads

9   guilty, statue requires that Trial Court first determine

10  degree of guilt and then fix punishment upon theory that no

11  issue is left to guilt of crime of murder, Petitioner clearly

12  demonstrates that the Due Process in this claim was not carried

13  out therefore denying him of this right.

14      13. That Petitioner was denied Due Process of Law by use

15  of robbery allegation to establish felony murder. At the plea

16  hearing, the prosecutor dismissed the robbery charges and told

17  the Courts that it was not considered, than used robbery to

18  establish murder in the first degree. The Court did not have

19  jurisdiction to accept guilty plea based on robbery allegations.

20      14. That the Court dismissed the robbery information

21  and agreed that it was jurisdictional error, futhermore the

22  information used to establish the degree of the crime violated

23  the Due Process Clause.

24      15. That Petitioner was denied Due Process of Law when

25  the police failed to notify his parents or attorney before the

26  Petitioners interrogation, arrest or indictment,whereas a minor

27  is entitled to the presence of his parents or attorney before

28  he is charged with a crime as an adult.

1    Under the penalty of perjury, and pursuant to NRS 208.165

2  that above statement/Affidavit is true and correct to the best

3  of Affiants personal knowledge.

4    DATED this 22nd day of October 1991.

5

6                                    *Jimmie Davis 27362*

7                                    Jimmie Davis
                                     Ely State Prison
                                     P.O.B.1989
8                                    Ely, Nevada 89301

9

10  _____            *Frank LaPena*
    Thomas Caruso/Witness           Frank LaPena/Witness
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK B. BAILUS, ESQ.
Nevada Bar No. 002284
LAW OFFICES OF CHERRY & BAILUS
600 South Eighth Street
Las Vegas, NV   89101
(702)   385-3788

Attorney for Petitioner
  JIMMIE DAVIS

DISTRICT COURT

CLARK COUNTY, NEVADA

* * * * * *

JIMMIE DAVIS,                          )
                                       )
                    Petitioner,        )
                                       )
     vs.                               )      CASE NO.   C 85078
                                       )      DEPT. NO.   IV
STATE OF NEVADA,                       )      DOCKET NO.   "C"
                                       )
                    Respondent.        )
_____)

## SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S PETITION FOR POST-CONVICTION RELIEF

Date of Hearing: _____ 2-26-92
Time of Hearing: _____

     COMES NOW, Petitioner, JIMMIE DAVIS, by and through his court appointed counsel of record, MARK B. BAILUS, ESQ., of the LAW OFFICES OF CHERRY & BAILUS, and hereby files his Supplemental Points and Authorities in support of his Petition for Post-Conviction Relief.

     These Supplemental Points and Authorities are made and based upon the papers, pleadings and documents on file herein, the Points

. . .

. . .

. . .

. . .

CE10
1

RI

1 | and Authorities that follow hereinafter and upon the argument of

2 | counsel to be adduced at the hearing hereon.

3 |     DATED this _9_ day of January, 1992.

4 |                     LAW OFFICES OF CHERRY & BAILUS

5 |

6 |                     By _Mark B. Bailus_

7 |                     MARK B. BAILUS, ESQ.

                    600 South Eighth Street

8 |                     Las Vegas, Nevada  89101

                    Attorney for Petitioner

9 |

10 |               **NOTICE OF HEARING**

11 | TO:   STATE OF NEVADA, Respondent; and

12 | TO:   REX BELL, ESQ., Attorney for Respondent:

13 |     YOU, AND EACH OF YOU, WILL PLEASE TAKE NOTICE that the

14 | undersigned will bring the Petitioner's PETITION FOR POST-

CONVICTION RELIEF on for hearing on the _20_ day of _Feb_,

15 | 1992, at the hour of _9_ _A_.m., in Department No. IV of

16 | the above-entitled Court, or as soon thereafter as counsel may be

17 | heard.

18 |     DATED this _9_ day of January, 1992.

19 |                     LAW OFFICES OF CHERRY & BAILUS

20 |

21 |

22 |                     By _Mark B. Bailus_

                    MARK B. BAILUS, ESQ.

23 |                     600 South Eighth Street

                    Las Vegas, Nevada  89101

24 |                     Attorney for Petitioner

25 |

26 |

27 |

28 |

Law Offices of
Cherry & Bailus
301 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101
(702) 385-3788
FAX (702) 385-5125

### MEMORANDUM OF SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S PETITION FOR POST-CONVICTION RELIEF

### I.

### PETITIONER'S PLEA OF GUILTY WAS NOT FREELY AND VOLUNTARILY ENTERED, AND THUS, SHOULD BE SET ASIDE

Petitioner submits, and the record supports, that the guilty plea herein must be set aside because the record does not affirmatively demonstrate it was knowingly and voluntarily entered. See, **Russell v. State**, 99 Nev. 264, 265, 661 P.2d 1292 (1983).

In **Higby v. Sheriff**, 86 Nev. 774, 476 P.2d 959 (1970), the Nevada Supreme Court incorporated the principles enunciated by the United States Supreme Court in their decision, **Boykin v. Alabama**, 395 U.S. 238 (1969), that where a plea of guilty is accepted, the "record should affirmatively show" that certain "minimal requirements" are met. Generally, said minimal requirements are as follows:

(1)  An understanding waiver of constitutional rights and privileges;

(2)  An absence of coercion by threat or promise of leniency;

(3)  An understanding of the nature of the charge, itself, i.e., the "elements" of the offense;

(4)  An understanding of the consequences of the plea, and the range of the punishments which may be imposed.

The above-stated requirements have been codefied in NRS 174.035(1), which provides, in pertinent part:

The court may refuse to accept a plea of guilty, and <u>shall not accept such plea...without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea.</u> [Emphasis added]

. . .

1    After a careful evaluation of the record herein, it is

2  apparent that it is utterly void of any indication that Petitioner

3  understood the elements of the murder charge.  Further, the record

4  is barren that Petitioner was ever explained of any defenses

5  available to him.  (Attached hereto as Exhibit "A", and by this

6  reference incorporate herein as though fully set forth, is the

7  Affidavit of Petitioner, Jimmie Davis).

8    The Court in **Higby**, **supra**, quoting from **McCarthy v. United**

9  **States**, 394 U.S. 459 (1969), in adopting the United States Supreme

10 Court's rationale of rigid adherence to Rule 11 of the Federal

11 Rules of Criminal Procedure, stated:

12        First, although the procedure embodied in Rule 11 has not
         been held to be constitutionally mandated, it is designed
13        to assist the district judge in making the constitution-
         ally required determination that a defendant's guilty
14        plea is truly voluntarily.  Second, the Rule is intended
         to produce a complete record at the time the .plea is
15        entered of the factors relevant to this voluntariness
         determination.  Thus, the more meticulously the Rule is
16        adhered to, the more it tends to discourage, or at least
         to enable more expeditious dispotion of, the numerous and
17        often frivolous post-conviction attacks on the constitu-
         tional validity of guilty pleas.
18
19 86 Nev. at 779, **quoting** 395 U.S. at 465.

20        Concluding, the Court in **McCarthy** stated:

21        Our holding that a defendant whose plea has been accepted
         is violation of Rule 11 should be afforded the opportuni-
22        ty to plea anew not only will insure that every accused
         is afforded those procedural safeguards, but also will
23        help reduce the great waste of judicial resources
         required to process the frivolous attacks on guilty plea
24        convictions that are encouraged and are more difficult to
         dispose of, when the original record is inadequate.  It
25        is, therefore, not too much to require that, before
         sentencing defendants to years of imprisonment, district
26        judges take the few minutes necessary to inform them of
         their rights and to determine whether they understand the
27        action they are taking.

28 394 U.S. at 472; **see also**, 86 Nev. at 779-80.

4

1     ...The United States Supreme Court recalled in **Henderson**
2 the long-accepted principle that a guilty plea must
provide a truthworthy basis for believing that the
defendant is in fact guilty. Thus, the "constitutional
3 rule relevant" to such cases is "that the defendant's
guilt is not deemed established by entry of a guilty
4 plea, unless he either admits that he committed the crime
charged, or enters his plea knowing what the elements of
5 the crime charged are."

6 97 Nev. at 134.

7     After carefully reviewing the canvassing by the court of the

8 Petitioner, it is clear there was on discussion as to the "ele-

9 ments" of murder, or any other crime. Further, the record is

10 barren as to what, if anything, was explained concerning the

11 elements of the crime, or whether the Petitioner actually under-

12 stood what was explained.[1]

13     A similar scenerio occurred in **Hanley v. State**, 97 Nev. at

14 page 134, wherein the Court observed:

15     There was no mention of murder in the first degree or any
other crime in this portion of the canvassing; there was
16 no mention of the "elements" of first degree murder or
any other crime; there was no statement as to what, if
17 anything, was explained, nor what, if anything, the
defendant understood as a result of such explanation. As
18 a showing that defendant under the stated circumstances
knew or understood what the elements of the crime he was
19 pleading to were, the record is completely deficient.

20                       * * * *

21     Although we have disclaimed the necessity for "articula-
tion of talismanic phrases", **Heffley v. Warder**, 89 Nev.
22 573, 516 P.2d 1403 (1973), in plea hearings and have
declined to "impose upon our trial judges the rigid
23 requirements imposed upon federal judges when pleas are

24

[1] Close scrutiny of the record herein reveals that it is
25 barren of any indication that trial counsel explained to Petitioner
the principles of the "felony-murder" rule and how it may be
26 applicable to Petitioner's case. Such is important in light of the
fact that during a colloquy between the prosecutor and the court at
27 the plea hearing, it appears the prosecutor relied upon the
"felony-murder" rule as the underlying basis for the court to
28 accept Petitioner's plea.

Law Offices of
Oscar B. Bilbao
501 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101
(702) 385-3788
FAX (702) 385-5125

5

1    taken under Federal Rules of Criminal Procedures, Rule
     11, **Wynn v. State of Nevada**, 96 Nev. 673, 615 P.2d 946
2    (1980), we would hold that constitutional requirements
     and the statutory reqirement of NRS 174.035(1) demand
3    <u>either</u> a showing that the defendant himself (not just his
     attorney) understood the elements of the offense to which
4    the plea was entered <u>or</u> a showing that the defendant,
     <u>himself</u>, has made factual statements to the court which
5    constitute an admission to the offense pled to [Emphasis
     added]
6

7    Based on the foregoing, it is obvious that there was no

8    adequate showing that the Petitioner understood the particular

9    charge he pled guilty to, and specifically, that he understood the

10   elements of the crime of murder.

11       Since the Information was never read to the Petitioner on the

12   record, and there is absent from the record the necessary affirma-

13   tive showing that Petitioner understood the nature of the offense

14   to which he was pleading, Petitioner's plea of guilty should be set

15   aside.  See, **DeBose v. State**, 100 Nev. 339, 682 P.2d 195 (1984; and

16   **Sigler v. Director of Nevada State Prisons**, 97 Nev. 221, 625 P.2d

17   275 (1981).

                            II.
18

19                **THE PETITIONER WAS DENIED HIS**
                  **CONSTITUTIONAL RIGHT TO**
20               **EFFECTIVE ASSISTANCE OF COUNSEL**

21       Petitioner submits that he was denied his Sixth Amendment

22   right to effective assistance of counsel.

23       It is axiomatic that the Petitioner under the Sixth Amendment

24   was guaranteed the right to the assistance of counsel for his

25   defense, even though he lacked funds for counsel.  See, **Gideon v.**

26   **Wainwright**, 372 U.S. 335, 83 S.Ct. 792 (1963).  Further, the right

27   to effective and competent assistance of counsel for the right

28   given is not just formal, but a substantial right.  See, **Powell v.**

Law Offices of
Cherry & Bailus
901 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101
(702) 385-3788
FAX (702) 385-5125

                            6

1  **Alabama**, 350 U.S. 85, 76 S.Ct. 167 (1955).

2      The traditional standard in Nevada to measure counsel's

3  conduct to find ineffective assistance of counsel was to determine

4  whether counsel's representation was of such a low caliber as to

5  reduce the proceedings to be a "sham, farce, or mockery."  See,

6  **White v. State**, 95 Nev. 159, 591 P.2d 266 (1979).

7      Such is no longer the standard in Nevada.  The appropriate

8  standard used to determine effectiveness of counsel is stated in

9  **Warden v. Lyons**, 100 Nev. 430, 683 P.2d 504 (1984), whereby the

10  Court expressly adopted the "reasonably effective assistance"

11  standard enunciated in **Strickland v. Washington**, 104 S.Ct. 2052

12  (1984):

13      The United States Supreme Court has recently adopted the

14  "reasonably effective assistance standard for ineffective counsel

15  in criminal cases.   This constitutional standard supplanted

16  Nevada's traditional 'farce and sham' test.:  See, **Strickland v.**

17  **Washington**, 466 U.S. 668, 52 U.S.L.W. 4565 (May 14, 1984).

18      In **Strickland v. Washington**, **supra**, the Court stated:

19          The Court has not elaborated on the meaning of the
          constitutional requirement of effective assistance in the
20          latter class of cases -- that is, those presenting claims
          of "actual ineffectiveness."  In giving meaning to the
21          requirement, however, we must take its purpose -- to
          ensure a fair trial -- as the guide.  The benchmark for
22          judging any claim of ineffectiveness must be whether
          counsel's conduct so undermined the proper functioning of
23          the adversarial process that the trial cannot be relied
          on as having produced a just result.  **Strickland v.**
24          **Washington**, **supra**, at 2064.

25                              * * *

26  A convicted defendant's claim that counsel's assistance
   was so defective as to require reversal of a conviction
27  or death sentence has two components.  First, the
   defendant must show that counsel's performance was
28  deficient.   This requires showing that counsel made

                                7

errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Recently, in **Wilson v. State**, 105 Nev. 110, 112, 771 P.2d 583 (1989), the Court concluded:

In **Strickland v. Washington**, 466 U.S. 668 (1984), the Supreme Court defined standards for a defendant's Sixth Amendment right to effective assistance of counsel. The Court described two components of a showing of ineffective assistance of counsel in the context of a murder conviction or death sentence. First, the accused must show that counsel's representation fell below an objective standard of reasonableness. **Id**. at 687.

In order to prove prejudice, the accused must show that there is a reasonable probability that, but for counsel's mistakes, the result of the proceeding would have been different. **Id.** at 694.

The foregoing is in accord with the standard adopted by the Ninth Circuit in **Cooper v. FitzHarris**, 586 F.2d 1235 (9th Cir. 1978), cert. denied, 440 U.S. 974 (1979).

Defense counsel's errors or omissions must reflect a failure to exercise the skilled judgment or diligence of a reasonably competent criminal defense attorney; they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made.

After a careful review of the record herein, it is apparent that Petitioner's trial counsel did not expend the time and/or energies necessary to prepare a meaningful defense, nor conduct "a reasonably substantial investigation" into a plausible line of defense. Specifically, trial counsel failed to investigate and/or interview certain witnesses who would have testified that the shooting was accidental and not intentional. (See Affidavit of

Law Offices of
*Cherry & Bailus*
501 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101
(702) 385-3788
FAX (702) 385-5125

8

1  Petitioner attached hereto as Exhibit "A".)

2                              III.

3          **AN EVIDENTIARY HEARING ON THE ISSUE**
       **OF INEFFECTIVE ASSISTANCE OF COUNSEL IS WARRANTED**
4
5          As  argued  previously,  many  of  Petitioner's  contentions

6  contained factors outside the record, thus, an evidentiary hearing

7  is warranted in the case <u>sub</u> <u>judice</u>.

8          This  Court  has  uniformly  held  that  if  a  post-conviction

9  petition alleges facts which, if true, would entitle the Petitioner

10 to relief, the petitioner must be afforded an evidentiary hearing

11 unless  the  available  record  repels  the  petitioner's  claims.

12 **Hargrove v. State**, 100 Nev. 498, 686 P.2d 222 (1984); **Hatley v.**

13 **State**, 100 Nev. 214, 678 P.2d 1160 (1984); **Grodin v. State**, 97 Nev.

14 454, 634 P.2d (1981); **Doggett v. State**, 91 Nev. 768, 542 P.2d 1066

15 (1975).

16         In **Gibbons v. State**, 97 Nev. 520, 634 P.2d 1214 (1981) the

17 Court specifically found that because most claims of ineffective

18 assistance of trial counsel involves question of fact that can only

19 be resolved by the District Court at an evidentiary hearing post

20 conviction relief is the proper remedy. <u>See also</u>, **Bolden v. State**,

21 99 Nev. 181, 659 P.2d 886 (1983) wherein the Court, after examining

22 the petition and the affidavit of the defendant, determined that an

23 evidentiary hearing was necessary.   In **Bolden**, **supra**, the court

24 stated:

25            "...if a petition for post conviction relief
            contains allegations which, if true, would
26            entitle the petitioner to relief, an eviden-
            tiary hearing thereon is required."
27
28 **Id**. Nev. at 183, 659 P.2d at 886.

Law Offices of
Cherry & Bailus
501 SOUTH SIXTH STREET
LAS VEGAS, NEVADA 89101
(702) 385-3788
FAX (702) 385-5125

1    Similarly, in **Lewis v. State**, 100 Nev. 456, 686 P.2d 219

2  (1984) the Court specifically refused to review the effectiveness

3  of counsel on direct appeal, stating "effectiveness of counsel may

4  be reviewed after an evidentiary hearing has been held in which

5  counsel can testify concerning his performance." **Lewis**, 100 Nev.

6  at 461.

7    Petitioner submits it was the legislative intent in enacting

8  NRS 177.315, et seq., that the performance of counsel be tested in

9  an evidentiary setting wherein counsel is able to defend himself

10  concerning the allegations and a defendant is allowed to challenge

11  the actions and performance of counsel. **Accord**, **Gibbons v. State**,

12  **supra**.

**CONCLUSION**

14    Based on the foregoing specification of errors and those

15  contained in the proper person Petition for Post-Conviction Relief,

16  Petitioner submits that said Petition for Post-Conviction Relief

17  should be granted or in the alternative, an evidentiary hearing

18  should be conducted.

19    Respectfully submitted this ___9___ day of January, 1992.

20                  LAW OFFICES OF CHERRY & BAILUS

22  By _Mark B Bailus_

23  MARK B. BAILUS, ESQ.
    600 South Eighth Street
24  Las Vegas, Nevada  89101
    Attorney for Petitioner

1 | REX BELL
DISTRICT ATTORNEY
2 | Nevada Bar #001799
200 S. Third Street
3 | Las Vegas, Nevada    89155
(702) 455-4711
4 | Attorney for Plaintiff
THE STATE OF NEVADA
5 |
6 |                         DISTRICT COURT
7 |                     CLARK COUNTY, NEVADA
8 | THE STATE OF NEVADA            )
9 |                                )
                 Respondent,       )
10 | vs.                           )
11 |                               )
    JIMMIE DAVIS, #0854767         )
12 |                               )
                 Petitioner.       )    CASE NO.   C85078
13 |                               )    DEPT. NO.   IV
   ─────────────────────────────────)    DOCKET NO.   C
14 |       FINDING OF FACTS AND CONCLUSIONS OF LAW AND ORDER
15 |
                    DATE OF HEARING: 3/25/92
16 |                  TIME OF HEARING: 9:00 A.M.
17 |       THIS CAUSE having come on for hearing before the Honorable
18 | Gerard Bongiovanni, District Judge, on the 25th day of March, 1992,
19 | the petitioner not being present, being represented by MARK BAILUS,
20 | ESQUIRE, the Respondent the State of Nevada, by REX BELL, District
21 | Attorney, through TERESA LOWRY, Deputy District Attorney, and the
22 | Court having considered the matter, including briefs, transcripts,
23 | arguments of counsel, wherefore, the Court makes the following:
24 |            FINDING OF FACTS AND CONCLUSIONS OF LAW
25 |       Petitioner contends that the guilty plea herein must be set
26 | aside because the record does not affirmatively demonstrate it was
27 | knowingly and voluntarily entered.
28 | //

1    The law in Nevada clearly establishes that a plea of guilty is
2 presumptively valid and the burden is on the defense to show that
3 the plea was not voluntarily entered. <u>Wingfield v. State</u>, 91 Nev.
4 336 (1975). Undoubtedly, the petitioner had discussed his guilty
5 plea with his attorney. The case of <u>Patton v. Warden</u>, 91 Nev. 1,
6 530 P.2d 107 (1975), suggests that the presence and advise of
7 counsel is a significant factor in determining the voluntariness of
8 a plea of guilty. Furthermore, the Nevada Supreme Court, citing
9 <u>Brady v. United States</u>, 397 U.S. 742, 90 S.Ct. 1463 (1970), makes
10 it clear in the case of <u>Heffley v. Warden</u>, 89. Nev. 573, 516 P.2d
11 1403 (1973), that the guidelines for voluntariness of pleas of
12 guilty "do not require the articulation of talismanic phrases. It
13 required only that the record must affirmatively disclose that a
14 defendant who plead guilty entered his plea understandingly and
15 voluntarily."

16    In <u>Hanly v. State</u>, 97 Nev. 130, 624 P.2d 1387 (1981), the
17 court listed the requirements for a guilty plea.

18    This court has held in <u>Higley v. Sheriff</u>, 86 Nev. 774, 476
19 P.2d 959 (1970), in harmony with the United States Supreme Court
20 decision <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), that in cases
21 where a guilty plea is accepted the record should affirmatively
22 show that certain minimal requirements are met. These are
23 generally,

24    1. An understanding waiver of constitutional rights and
25 privileges,

26    2. Absence of coercion by threat or promise of leniency,

27    3. Understanding of consequences of the plea, the range of
28 punishments, and

2

1    4. An understanding of the charge, the elements of the
2  offense.  See also Wilson v. State, 99 Nev. 362, 664 P.2d 328
3  (1983).

4    The Court fully explained the petitioner's rights and the
5  effect of his entry of a guilty plea.  A review of the transcript
6  of entry of plea reflects that the petitioner responded to
7  questions by the Court and offered a factual basis for the entry of
8  plea.

9    Based on the above the petitioner entered a full, knowing plea
10  of guilty which a review of the record reflected.  Accordingly, the
11  post-conviction petition on this ground is    denied.

12    The petitioner contends that he was denied his right to
13  effective assistance of counsel under Strickland v. Washington, 466
14  U.S. 668 (1984), and Warden v. Lyons, 100 Nev. 430, 683 P.2d 504
15  (1984), cert. denied, 471 U.S. 1004 (1985), at his trial.

16    Traditionally, in Nevada, the defendant was denied effective
17  assistance of counsel only if the proceedings are reduced to a
18  sham, farce, or pretense.  Lavell v. State, 92 Nev. 546 (1976).
19  However in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), the
20  Supreme Court indicated that Nevada's traditional standard has been
21  supplanted by the United States Supreme Court's adoption of the
22  "reasonably effective assistance" test of Strickland v. Washington,
23  466 U.S. 668, 104 S.Ct. 2052 (1984).

24    In Strickland, the United States Supreme Court held that to
25  prevail on a claim of ineffective assistance of counsel, a
26  defendant must first show that counsel's performance was deficient.
27  This requires showing that counsel made errors so serious that
28  counsel was not functioning as the counsel guaranteed by the Sixth

1  Amendment.   Secondly,  the  defendant  must  show  the  deficient
2  performance prejudiced the defense.  The Supreme Court stated that
3  this requires showing that counsel's errors were so serious as to
4  deprive  the  defendant  of  a  fair  result.   A  person  alleging
5  ineffective counsel must make both of the aforementioned showings
6  to  prevail.   A  fair  assessment  of  an  attorney's  performance
7  requires that every effort be made to eliminate the distorting
8  efforts of hindsight.   Strickland, 466 U.S. at p. 689; Ford v.
9  State, 105 Nev. 850, 853, 784 P.2d 951 (1989).

10      It is presumed that counsel fully discharged his duties, and
11 that presumption can only be overcome by strong and convincing
12 proof to the contrary.  Warden v. Lischko, 90 Nev. 221, 223, 523
13 P.2d 6 (1974).  Donovan v. State, 94 Nev. 671, 674, 584 P.2d 708
14 (1978).   The  petitioner's  allegations  fail  to  rebut  this
15 presumption either singly or in combination.  Furthermore, there
16 has been no showing that counsel's performance was deficient.

17     Effective counsel does not mean errorless counsel, United
18 States v. Yanishevsky, supra: United States v. Beasley, 479 F.2d
19 1124 (5th Cir. 1973), cert. denied 414 U.S. 924, reh. denied 414
20 U.S. 1052.  What appears by hindsight to be wrong or poorly advised
21 decision of tactics or strategy is not sufficient to meet the
22 defendant's heavy burden of proving ineffective counsel.  Tactical
23 decisions regarding the conduct of a defendant's case are virtually
24 unchallengeable absent extraordinary circumstances.   Mazzan v.
25 State, 105 Nev. 745, 783 P.2d 430 (1989).  Ford v. State, 105 Nev.
26 157, 850 P.2d 951 (1989).  The petitioner has not set forth such
27 extraordinary circumstances.  He has not established that in light
28 of all the circumstances the identified acts or omissions of

4